## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ALAN P. WOODRUFF, DANIEL FENTON,
LIBERTARIAN PARTY OF NEW MEXICO,
GREEN PARTY OF NEW MEXICO, and
DONALD HILLIS,**

      **Plaintiffs,**

**vs.**               **Civ. No.  09-449 JH/KBM**

**MARY HERRERA, in her official capacity
as New Mexico Secretary of State,**

      **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on *Defendant's Motion to Dismiss* [Doc. No. 22], filed August 18, 2009, as well as Plaintiffs' motion for leave to file a surreply [Doc. No. 55] and various other motions, including certain motions for summary judgment filed by the Plaintiffs.  In this lawsuit challenging the constitutionality of the State of New Mexico's Election Code, the Defendant asks the Court to dismiss the Plaintiffs' entire complaint for failure to state a claim upon which relief may be granted.  The Court has reviewed the arguments of counsel and the authorities cited therein, including Plaintiffs' proposed surreply.  Thus, Plaintiffs' motion for leave to file their surreply will be granted.  For the reasons discussed in detail below, the motion to dismiss Plaintiffs' claims will be granted in part and denied in part, and as a result several of Plaintiffs' motions for summary judgment will be denied as moot.

## BACKGROUND

According to the Complaint [Doc. No. 1][1], Plaintiff Alan P. Woodruff is a declared candidate for the United States House of Representatives, and Plaintiff Daniel Fenton "desires" to be a candidate for election to the United States House of Representatives, both from the State of New Mexico. Both Woodruff and Fenton are residents of New Mexico, but Fenton is not registered to vote in New Mexico. As for Plaintiff Donald Hillis, the Complaint alleges merely that he is a resident of New Mexico and a registered voter therein. Plaintiffs Libertarian Party of New Mexico and Green Party of New Mexico both were formerly qualified as "minor" political parties in the State of New Mexico but then "de-qualified" by the Secretary of State in April of 2009. Both the Libertarian and Green parties wish to nominate candidates for local, state, and federal offices in the 2010 general election. Plaintiffs have sued the Defendant, New Mexico Secretary of State Mary Herrera[2], in her official capacity. Herrera moves to dismiss the complaint for failure to state a claim for which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## LEGAL STANDARD

In May 2007, the United States Supreme Court handed down *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in which it announced a clarified standard for motions to dismiss and stated that a complaint must contain enough factual allegations "to state a claim to relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Thus, *Twombly* rejected the "no set of facts" standard that had been the motion to dismiss benchmark for many years. 550 U.S. at 561-63. Now, a plaintiff has the burden to frame a

---

[1] Plaintiffs filed a motion for extension of time to file their Amended Complaint, which this Court granted. Doc. No. 48. However, Plaintiffs did not file an Amended Complaint.

[2] The undersigned federal district judge is not related to Defendant Herrera.

2

"complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556).  In order for a complaint to satisfy this new standard, a plaintiff must do more than generally allege a wide swath of conduct. *Robbins*, 519 F.3d at 1247.  A plaintiff must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Id*. (quoting *Twombly*, 550 U.S. at 570).

In *Robbins*, the Tenth Circuit stated that plausibility serves two purposes: (1) to weed out claims that, absent additional pleadings, do not have a reasonable prospect of success, and (2) to inform the defendants of the actual grounds of the claim against them.  519 F.3d at 1248.  A court, therefore, must review a complaint with these purposes in mind.  Not surprisingly, the *Twombly* opinion is critical of complaints that do not mention specific times, places or people involved.  *Id*. (citing *Twombly*, 127 S.Ct. at 1971 n. 10).

## DISCUSSION

**I.      Count I: Violation of New Mexico's State Constitution**

For their first claim, the Plaintiffs rely upon Article II, Section 8 of the New Mexico Constitution, which states that "All elections shall be free and open, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."   Plaintiffs ask this Court to declare that "all provisions of the New Mexico Election Code that impose nominating petition signature requirements on candidates as a condition for access the [sic] ballot for general elections" violate that provision, and are therefore unconstitutional.  Doc. 1, ¶ 26(A).  They contend that Article II, Section 8 "precludes any statutory restriction on ballot access by any otherwise qualified candidate."  *Id*. at ¶ 25.

In her motion to dismiss, Herrera argues that Count I fails to state a claim for three reasons.

3

First, she argues that Article II, Section 8 is concerned principally with the right to vote in state elections, not with ballot access.  Next, she argues that the provision does not prevent the Legislature from enacting any ballot restriction unless it impairs Plaintiffs' right to an honest, open, and fair election, and that the United States Supreme Court has found even greater restrictions to be valid. Third, Herrera contends that Count I fails to state a claim because Plaintiffs have failed to identify any particular provision of the Election Code that allegedly violates the New Mexico constitution and have failed to describe how their rights have been violated, thereby failing to meet the requirements of notice pleading.  The Court agrees with Herrera's second and third arguments, and therefore need not reach the first.

Count I of Plaintiffs' complaint fails to state a claim for which relief may be granted because it is vague and does not satisfy notice pleading requirements.  Though Plaintiffs request this Court to declaratory certain portions of the Election code unconstitutional and enjoin their enforcement, they fail to identify the provisions with which they seek this declaratory and injunctive relief.   In other words, Plaintiffs allege a "wide swath of conduct" without informing Herrera of the actual grounds of the claim against her.  This fails to satisfy the standard set forth in *Twombl*y.

In addition, Herrera moves to dismiss Plaintiffs' claim on the grounds that it fails to state a claim for violation of Article II, Section 8 of the New Mexico constitution.  Herrera contends that the United States Supreme Court has upheld ballot access provisions similar to those that Plaintiffs find objectionable.  In response, Plaintiffs point out that those decisions were made under the Elections Clause in the federal constitution and argue that the New Mexico constitution imposes greater restrictions on ballot access than does the constitution of the United States.  However, Plaintiffs provides no analysis of New Mexico law in support of their argument.  For example, missing from Plaintiffs' brief is any analysis of the facts and reasoning of New Mexico state court

4

decisions that support their position and an attempt to analogize them to this case, a discussion of the text of Article II, Section 8 or the intent of its framers, or an examination of New Mexico public policy as it relates to the rule that they advocate.  It is not enough to merely assert that the New Mexico courts have interpreted the state constitution more broadly in other contexts and therefore they would do they same in this situation as well.  Rather, Plaintiffs have an obligation to explain why they believe this to be the case.  As the New Mexico Supreme Court has said, "when a party asserts a state constitutional right that has *not* been interpreted differently than its federal analog, a party also must assert *in the trial court* that the state constitutional provision at issue should be interpreted more expansively than the federal counterpart *and* provide reasons for interpreting the state provision differently from the federal provision."  *State v. Gomez*, 1997-NMSC-006, ¶ 23, 122 N.M. 777 (emphasis in original).  Having failed to provide reasons for interpreting Article II, Section 8 of the New Mexico constitution differently from the federal Elections Clause in this situation, Plaintiffs' argument fails.

      Accordingly, the motion to dismiss Count I will be granted and the claim dismissed without prejudice.

**II.**       **<u>Count II: Violations of the Qualifications Clause in the United States Constitution</u>**

      Count II of Plaintiffs' complaint actually contains three separate claims for violation of the Qualifications Clause found in Article I, Section 2 of the Constitution of the United States.  It provides: "No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen."

     **A.**      **Residency and Registration Requirement**

In Count II-A of the Complaint, Plaintiffs Fenton, Libertarian Party, Green Party, and Hillis[3] rely upon Sections 1-8-18 and 1-8-12 of the Election Code, which together provide that a candidate for nomination by a political party must demonstrate, *through voter registration records*, that he is affiliated with that political party as of the date of the Governor's proclamation for the primary election, which is filed on the last Monday in January of each even-numbered year.  Plaintiffs contend that this violates the Qualifications Clause by imposing a requirement for U.S. Representative not found in the federal Constitution—voter registration.  Herrera responds that these sections do not violate the Qualifications Clause, arguing that voter registration is merely a qualification for running under the auspices of a political party, not a qualification to hold the office of U.S. Representative.  That would be true if in New Mexico a candidate for U.S. Representative could run for that office as an independent, regardless of whether or not the candidate was registered to vote.  However, Herrera's argument is belied by Section 1-8-45(C) of the Election Code, which provides that an independent candidate for U.S. Representative must be a "qualified elector *registered to vote in New Mexico* at the time of filing the declaration of independent candidacy and nominating petition." (emphasis added).  Thus, regardless of whether one runs for office as the nominee of a political party or as an independent candidate, under the current law one must be registered to vote in New Mexico.

The Tenth Circuit's opinion in *Campbell v. Davidson*, 233 F.3d 1229 (10th Cir. 2000) is instructive on this issue.  In that case, the plaintiff challenged a Colorado state election law requiring that unaffiliated candidates for U.S. Representative be registered to vote in that state.  The Tenth Circuit concluded that the Colorado law was not a valid exercise of the state's regulatory power

---

[3] From the Complaint it appears that Woodruff does not assert a claim for relief in Count II-A.  Doc. No. 1 at ¶ 37.

under the Elections Clause and that the statute violated the Qualifications Clause. The court reasoned: "Colorado's registration requirement does little to 'winnow out' chosen candidates, but rather completely *exclude*s those who have not registered. . . . The Colorado registration requirement does not advance ballot housekeeping by limiting access to the ballot based on electoral support; instead, it limits access based on other exclusionary measures." *Id*. at 1233 (emphasis in original). That is precisely the case here. The New Mexico Election Code completely excludes from the ballot those who have not registered to vote, regardless of whether they seek to run under the banner of party affiliation or as independent candidates. There is simply no way in which a candidate who is not registered to vote can get on the ballot in New Mexico. Accordingly, under *Campbell*, registration is a *de facto* requirement for the office. *Id*. at 1234 (concluding that Colorado law "disadvantages a particular class of candidates and evades the dictates of the Qualifications Clause" by precluding all non-registered persons from candidacy).

In accordance with *Campbell*, Plaintiffs have stated a claim for violation of the Qualifications Clause and the Elections Clause, and therefore the motion to dismiss will be denied.[4]

## B.     Declaration of Candidacy Form

In Count II-B, Plaintiffs Fenton, Libertarian Party, Green Party, and Hillis[5] rely upon Sections 1-9-29 and 1-8-48 of the Election Code, which require major party candidates and independent candidates, respectively, to file a "Declaration of Candidacy" form with the Secretary

---

[4] At various points in the briefing, Herrera mentions in passing what appear to be concerns that certain Plaintiffs may lack standing to assert certain claims. However, the parties have not properly or thoroughly briefed the issue of standing, and accordingly the Court does not address it here.

[5] From the Complaint it appears that Woodruff does not assert a claim for relief in Count II-B. Doc. No. 1 at ¶ 51.

of State.  Plaintiffs allege, and Herrera admits, that the Election Code contains no such requirement for minor party candidates.  However, the Secretary of State still requires that candidates from minor parties fill out a form titled "Declaration of Candidacy—Minor Party," which requires the candidate to identify his address and establish his affiliation with the minor party, both by reference to his voter registration.  Section 1-1-7.1 of the Election Code provides that a candidate's "residence shall be resolved in favor of that place shown on the person's certificate of registration as his permanent residence."

Plaintiffs further allege that Article I, Section 2, clause 2 of the United States Constitution requires only that a U.S. Representative be a resident of the State from which he is elected "when elected," and they contend that the federal constitution does not require such a Representative be a registered voter in the State in which he is elected.  Plaintiffs allege, and Herrera admits, that neither the Election Code nor the Secretary of State provide an alternative under which a candidate who is not a registered voter can qualify to be listed on the ballot in the general election.  Doc. No. 1 at ¶ 50.  They ask the Court to declare that the Declaration of Candidacy requirement imposes upon candidates an unconstitutional qualification for office and improperly impairs minor candidates' rights to be included on the ballot for the office of U.S. Representative.  They also ask the Court to enjoin the Secretary of State from requiring that minor party candidates file a Declaration of Candidacy form in order to be on the ballot in the general election.[6]

The nature of Plaintiffs claim is unclear.  On the one hand, Plaintiffs appear to argue that the

---

[6] Though Plaintiffs pled this claim as a violation of the Qualifications Clause, in their response brief [Doc. No. 36] they contend that it is really a claim for a violation of the Elections Clause.  Herrera claims that Plaintiffs should be barred from asserting Count II-B under the Elections Clause when it was pled under the Qualifications Clause.  The controversy is moot, however.  As explained in further detail below, under *Campbell v. Davidson* the claim should not be dismissed.

Declaration of Candidacy form is unconstitutional because it requires prospective candidates to demonstrate New Mexico residency solely through voter registration, and therefore improperly requires voter registration as a qualification for office. If that is the nature of Plaintiffs' cause of action, then they have stated a claim for violation of the Elections and Qualifications Clauses for the same reasons as Count II-A, *supra*.

However, to the extent that Plaintiffs argue that the Secretary of State's requirement that minor party candidates file a Declaration of Candidacy form is *per se* unconstitutional merely because the Election Code does not explicitly provide that minor party candidates fill out such a form, then it will be dismissed. The Election Code does require that both major party candidates and independent candidates file a Declaration of Candidacy. The Secretary of State has "leveled the playing field" by requiring minor party candidates to do the same. According to Plaintiffs, "[i]n the absence [sic] an express statutory requirement, the Secretary has no authority to require minor party candidates for the office of U.S. Representative or Senator to file a Declaration of Candidacy." Doc. No. 36 at 17. Plaintiffs have offered no authority for their position, particularly where, as here, the Legislature already has imposed the filing requirement on both major party and independent candidates. Beyond the voter registration requirement discussed above, the Plaintiffs have failed to state a claim that the Declaration of Candidacy requirement imposes an unconstitutional requirement for office. To that extent, the motion to dismiss will be granted.

Accordingly, Herrera's motion to dismiss Count II-B will be granted in part and denied in part.

**C.   Candidate Petition Requirements**

In Count II-C, Plaintiffs allege that the Election Code's petition signature requirements for both political parties and individual candidates representing minor political parties violate the

Qualifications Clause.  Specifically, Section 1-7-2 of the Election Code provides that a political party will be qualified to nominate candidates for office by filing petitions containing the signatures of voters totaling not less than one-half of one percent of the total number of votes at the last general election for the office of governor or President of the United States.  In addition, under Section 1-8-2, a *candidate* of a qualified minor party may be listed on the ballot if he files petitions containing the signatures of voters totaling not less than one percent of the total number of votes at the last general election for the office of governor or President of the United States in the district he seeks to serve.  Plaintiffs contend that the petition signature requirements of Section 1-8-2 of the Election Code impose a qualification for office upon minor party candidates.  Herrera admits that the Election Code provides no alternative means for a minor party candidate for the office of U.S. Representative to be included on the ballot at the general election.  Doc. No. 1 at ¶ 58; Doc. No. 10 at ¶ 58.  Plaintiffs protest that by requiring both a minority party, as well as its individual candidates, to obtain signatures, the Election Code imposes an unfair burden that amounts to an unconstitutional qualification for office.  They further allege that the New Mexico Election Code is unique in requiring both minor parties and minor party candidates to obtain signatures for nominating petitions.  The Court disagrees.

In order to analyze this claim and determine whether it states a cause of action, the Court turns again to the Tenth Circuit's opinion in *Campbell v. Davidson*, 233 F.3d 1229 (10th Cir. 2000). There, in analyzing the plaintiff's Qualifications Clause claim, the court relied upon the Supreme Court's opinion in *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995), in which the court struck down Arkansas term limits for election to Congress.  In *Thornton*, the Court observed that election requirements that both disadvantage a particular class of candidates and evade the dictates of the Qualifications Clause are likely unconstitutional.  In *Campbell*, the Tenth Circuit struck down

the Colorado statute at issue for "foster[ing] the twin goals discouraged in *Thornton*" by preventing those ineligible to register to vote as well as all non-registered persons from candidacy.  233 F.3d at 1234.  The *Campbell* court observed that a valid regulation under the Qualifications Clause "served the state interest in protecting the integrity and regularity of the election process" and "did not involve measures that exclude candidates from the ballot without reference to the candidate's support in the electoral process." *Id*. (quoting *Thornton*, 514 U.S. at 835).

Here, the petition signature provisions of the Election Code serve "an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organizations's candidate on the ballot—the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election." *Jenness v. Fortson*, 403 U.S. 431, 442 (1971) (upholding Georgia's nominating petition signature requirements for minor party candidates).  *See also Anderson v. Celebrezze*, 460 U.S. 780, 788 n. 9 (1983) ("The State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates.").  The Election Code serves that important state interest in two ways.  First, a major political party demonstrates the proper support when any one of its candidates receives at least five percent of the vote in the general election for the office of governor or President of the United States and whose membership totals not less than one third of one percent of statewide registered voters.  NMSA 1978, § 1-1-9(A).  Similarly, minor political parties that cannot meet the foregoing requirement, *see id.* at § 1-1-9(B), may still qualify to place their candidates on the ballot by obtaining signatures on a nominating petition.  *Id*. at § 1-7-2(A). The Election Code also requires all candidates to demonstrate the proper support before their names may be placed on the general election ballot.  Candidates from major parties must defeat their

rivals in the primary, while minor party and independent candidates must satisfy petition signature requirements.  *Id*. at §§ 1-8-1, 1-8-2(B), and 1-8-50.  Thus, under the Election Code all parties and candidates must demonstrate the proper support as a prerequisite to getting on the ballot.

Second, unlike the unregistered candidates in *Campbell*, the Plaintiffs in this case have not been entirely excluded from the ballot as a result of the New Mexico Election Code's petition requirement.  If the Plaintiffs obtain the requisite number of signatures, they can appear on the ballot—either as members of their party, if it has properly qualified, or as independent candidates. Thus, Plaintiffs have failed to state a claim that the petition signature requirements for parties and candidates violate the Qualifications Clause.  Unlike the statute in *Campbell*, this aspect of the Election Code does not bar an entire class of candidates from the ballot.

Accordingly, Herrera's motion to dismiss will be granted and Plaintiffs' claims dismissed with prejudice.

III.    **Count III: Violation of the Elections Clause in the United States Constitution**

In Count III of their Complaint, the Plaintiffs assert four separate violations of the Elections Clause in the United States Constitution, which can be found in Article I, Section 4.  It states: "The Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof."

A.    **Minor Party Petition Requirements**

For this claim, Plaintiffs point to Section 1-8-2[7] of the New Mexico Election Code, which

---

[7] Although Plaintiffs state that they are challenging the Secretary of State's position based on Section 1-8-2(A), the petition requirements they discuss can actually be found in Section 1-8-2(B).

as described above requires all minor party candidates to file a petition with a prescribed number of signatures of "voters."  The crux of Plaintiffs' claim is that the petition form published by the Secretary of State for minor party candidates imposes additional requirements not found in the statute.  For example, the Secretary of State's form requires that it be signed by "*registered* voters." The Secretary of State's form also requires the printed name of the signer, as well as his address as registered, and the candidate's party affiliation—all pieces of information not explicitly required by the Legislature.  The Secretary of State requires that all candidates use her petition form only. Plaintiffs allege that by requiring candidates to use her petition form, Herrera has unlawfully violated the Elections Clause, which states that the Legislature shall prescribe the time, place and manner of elections.

The Court concludes that this claim should be dismissed.  Specifically, the Secretary is justified in requiring that the petition be signed by registered voters.  Section 1-8-2(B) provides that the petitions must be signed by "voters," and Section 1-1-5 provides, "As used in the Election Code, 'voter' means any qualified elector who is *registered* under the provisions of the Election Code." (emphasis added).  Furthermore, common sense dictates that one is not, and cannot be, a "voter" until one registers to do so.

With regard to the requirements of a printed name, address as registered, and party affiliation, it is true that none of these is mentioned in Section 1-8-2(B) regarding nominations by minor political parties to federal office.  In fact, while the Legislature did address the topic of petitions for candidates from minor political parties, the Legislature declined to enact a form of petition directed specifically to candidates from those parties.  NMSA 1978, § 1-8-2.  In stark contrast, the Legislature has chosen to prescribe a specific form for petitions for major party candidates, *see* §§ 1-8-30(C), 1-8-17(A), as well as independent candidates.  NMSA 1978, § 1-8-

13

50(C).  Both of those forms do require each voter signing the petition to provide a printed name and address as registered, and accordingly the Secretary of State's form of petition for minor party candidates merely mimics those forms.  *Id.*  Further, the major party nominating petition requires each signatory to identify his or her party affiliation.  *See* § 1-8-30(C).  Again, in this regard the Secretary of State's form for minor parties is no different than that for major parties.

Plaintiffs contend that under the Elections Clause, only the Legislature has the authority to prescribe these petition requirements, and that despite the fact that the Legislature failed to enact a form of petition for minor parties, Herrera has no authority to "fill in the gaps" created by legislative silence.  They claim that while the Secretary of State may possess that power with respect to state and local elections, under the Elections Clause that authority rests solely with the Legislature. Plaintiffs rely upon *Libertarian Party of Ohio v. Brunner*, 567 F. Supp. 2d 1006 (S.D. Ohio 2008). In that case, the portion of the Ohio election code dealing with ballot access requirements for minor parties and third parties had been found unconstitutional by the Sixth Circuit Court of Appeals. Afterwards, when the Ohio legislature failed to enact a valid election law, the Ohio Secretary of State attempted to bring Ohio into compliance with the Constitution by issuing directives containing new constitutional ballot access procedures.  Relying upon the Elections Clause, the *Brunner* court concluded that the Constitution conveys to the state legislative branch the exclusive power to prescribe the manner of electing candidates for federal offices; however well meaning, the executive branch of government has no such authority.  *Id.* at 1011.  In reaching its decision, the court relied upon the Supreme Court's decision in *Bush v. Gore*, 531 U.S. 98, 121 (2000), where it stated, "In *McPherson v. Blacker*, 146 U.S. 1, 13 S.Ct. 3, 36 L.Ed. 869 (1892), we explained that Art. II, § 1, el. 2, 'convey[s] the broadest power of determination' and 'leaves it to the legislature exclusively to define the method' of appointment.  A *significant departure* from the legislative scheme for

14

appointing Presidential electors presents a federal constitutional question." (emphasis added). In analyzing *Bush v. Gore*, the *Brunner* court observed that "[t]he seven justices who joined in opinions addressing the authority of the state legislatures under Article II all recognized the exclusive role given therein." *Brunner*, 567 F. Supp. 2d at 1012.

However, the Court agrees with Herrera that *Brunner* is distinguishable. Unlike the Ohio Legislature, the New Mexico Legislature has named the Secretary of State as the "chief election officer" charged with "obtain[ing] and maintain[ing] uniformity in the application, operation, and interpretation of the Election Code." NMSA 1978, § 1-2-1(A). That is precisely what Herrera has done here—she has maintained uniformity in the application of the Election Code by requiring candidates from minor parties to use the same petition form required of candidates from major parties and nearly identical to that used for independent candidates. The Court notes, in addition, that in *Brunner* the Secretary of State unilaterally enacted an entire system of ballot access procedures. Thus, there can be no question that it was a "significant departure" from the Ohio legislative scheme in the sense that the Supreme Court used that phrase in *McPherson v. Blacker*. That is far from the case here, where the New Mexico Legislature has mandated that minor party candidates file nominating petitions but was silent as to the specific form to be used, and Herrera has merely filled in that relatively small omission by requiring the same information required on petitions for major party and independent candidates. Plaintiffs suggest that this is unfair because the signatures they obtain are sure to be rejected by the courts, but they do not state *why* that is the case. Indeed, it appears that their signatures would be no more likely to be rejected than those in support of major party and independent petitions, because they all require the same supporting information. Furthermore, the Secretary of State's petition requirement is not such a significant departure from the Election Code such that it fundamentally impairs or changes the order of

15

elections and access to the ballot so as to undermine a carefully crafted legislative scheme. Finally, while *Brunner* has some persuasive value, it is not binding upon this Court. Accordingly, the Court will grant the motion to dismiss Count III-A with prejudice.

**B.      Time for Making Petition Forms Available**

In Count III-B, Plaintiffs allege that while Section 1-8-30(D) provides that the Secretary of State must make appropriate nominating petition forms for major party candidates available in October of each odd-numbered years, it is silent as to when she must do so for minor party candidates. In light of that silence, Herrera has elected to make the petitions for minor party candidates available in October of each odd-numbered year—at the same time she makes the forms available to major party candidates. Plaintiffs contend that in doing so, Herrera has violated the Elections Clause.

For the same reasons set forth in Part III(A) of this opinion, *supra*, the Court concludes that the Secretary of State has not improperly usurped the power of the Legislature or undermined a carefully created Legislative scheme. She has merely filled in a relatively minor gap in the Election Code and has done so in a way that places minor and major parties on the same footing. The motion to dismiss Count III-B will be granted and the claim dismissed with prejudice.

**C.      Requirement that Minor Party Candidates File a "Declaration of Candidacy"**

For Count III-C, Plaintiffs allege that while the Election Code requires both major party and independent candidates to file a "Declaration of Candidacy" with the Secretary of State, *see* NMSA 1978, § § 1-8-29, 1-8-30, and 1-8-48, it imposes no such requirement on minor party candidates. Despite this, Herrera requires all candidates, including those from minor parties, to file a Declaration of Candidacy. Plaintiffs contend that this violates the Election Clause of the U.S. Constitution.

Once again, the motion to dismiss should be granted for substantially the same reasons set

16

forth in Part III(A) of this opinion, *supra*.  By requiring minor party candidates to file a Declaration of Candidacy in the same way that the Legislature has imposed that requirement on both major party and independent candidates, Herrera has maintained uniformity in the application of the Election Code.  This is not a "significant departure from the legislative scheme" for electing U.S. Representatives in New Mexico.  The motion to dismiss Count III-C will be granted and the claim dismissed with prejudice.

### D.     Straight Party Voting and Designation of a Candidate's Party

In Count III-D, Plaintiffs allege that candidates who are nominated by "qualified" political parties, including major parties, are identified on the ballot by party affiliation, while those candidates who are members of any political party that has not independently qualified for ballot access are identified on the ballot as "independent."  They allege that identification of candidates by party affiliation is misleading and confusing to voters, and that the practice of giving voters the option to cast a "straight party" vote encourages voting for candidates based solely on party affiliation without regard to a candidate's qualifications.  Plaintiffs allege that the "straight party" voting option is unfairly prejudicial to candidates who are members of minor parties and therefore do not receive the benefit of a straight party voting option.  In Count III-D, unlike the other portions of Count III, Plaintiffs allege that straight party voting is unconstitutional under both the Elections Clause and the Equal Protection Clause of the Fourteenth Amendment.

"Equal protection is essentially a direction that all persons similarly situated should be treated alike."  *Grace United Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006).  Thus, a court considering an equal protection challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put

forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780 (1983)).

Here, Herrera argues that the claim should be dismissed because Plaintiffs have failed to allege that they are similarly situated to either major party candidates or to "qualified" minor party candidates. The Court disagrees. The Plaintiffs have pled that they, like other candidates who are on the ballot, have done enough under the Election Code to win a place on the ballot. Thus, they have pled that they are similarly situated to those candidates, some of whom are able to benefit from straight party voting, while others are not. This is sufficient under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), discussed *supra*. Accordingly, the motion to dismiss Count III-D will be denied.

IV.     **Count IV: Petition Forms Unconstitutionally Vague**

A.     **Rule 12(b)(6)**

Defendants move for dismissal of all Plaintiffs' claims in Counts IV, V, VI, and VII of the Complaint on the grounds that they fail to state a claim. In addition, Defendants argue that the claims of the Libertarian Party in Counts IV, V, VI, and VII are barred by the doctrine of res judicata. The Court discusses each claim, and each theory of dismissal, in turn.

In Count IV of the Complaint, Plaintiffs allege that Election Code provides that persons signing the nominating petitions required for minor parties declare that they are "*voters* of New Mexico." *See* NMSA 1978, § 1-7-2(A) (emphasis added). Similarly, Section 1-8-2(B) of the Election Code provides that minor party candidates much file "a petition containing a list of

signatures and addresses of *voters*. . ."[8] (emphasis added).  However, Herrera requires minor parties to use a form of petition in which signatories must verify that they are "qualified electors" of a particular New Mexico county, and thus varies from the language of Section 1-7-2(A).  The terms "voter" and "qualified elector" are both defined in the Election Code.  A "qualified elector"  is "any person who is qualified to vote under the provisions of the constitution of New Mexico and the constitution of the United States," NMSA 1978 § 1-1-4, while as previously stated above, a "voter" is "any qualified elector who is registered under the provisions of the Election Code."  *Id*. at § 1-1-5.  Thus, one may be a qualified elector without being a voter.[9]

Further, Plaintiffs allege that while Section 1-8-2(B) requires signers of petitions for minor candidates provide their "address," it does not specify whether they must provide their address of current residency or their address as registered to vote.   Section 1-8-31(B), which discusses signatures to be counted for nominating petitions, does provide that "[a] person who signs a nominating petition shall indicate his residence as his address.  If the person does not have a residential address, he may provide his mailing address."   However, the Secretary of State's nominating petition form requires petition signers to identify their address "as registered."  Again, the petition form that the Secretary of State has adopted for minor party candidates is identical to that prescribed for major party candidates in Section 1-8-30.

Plaintiffs contend that the inconsistent and unclear meanings of the words "voter" and

---

[8]Throughout their Complaint, Plaintiffs sometimes refer to Section 1-8-2(A) when it appears that they mean Section 1-8-2(B).  The former does not include words "voter" or "address."

[9] Plaintiffs also complain that the Secretary of State's nominating petition form for minor party candidates requires signatories to be "registered voters" rather than merely "voters." However, as previously discussed, under Section 1-1-5, the two terms mean the same thing.

"address" as set forth in the statute and the Secretary of State's approved petitions forms are ambiguous such that minor political parties and their candidates are unable to determine which persons are qualified signers of their petitions and what address information they must provide. Accordingly, they ask the Court, *inter alia*, to find that the terms "voter" and "address" as used above are unconstitutionally vague and that the nominating petition requirements of Sections 1-7-2(A) and 1-8-2(B) are unenforceable.

The Court concludes that Count IV does state a claim that the cited provisions of the Election Code are unconstitutionally vague and internally contradictory, making it impossible for candidates to determine what information the signers of their petitions are obligated to provide. Sections 1-7-2(A) provides that a petition signer must provide his address of residence, while Section 1-8-2(B) requires only the "address." Similarly, Section 1-8-31(B) requires a signer to 'indicate his residence as his address." On the other hand, the statutorily mandated petition forms for major party and independent candidates (on which the Secretary of State has modeled the minor party candidate petition form, which is not found in the Election Code) states that signers must provide their address as registered. It is beyond dispute that a voter's residential address may not be the same as his address as registered. This internal contradiction within the Election Code has led, in turn, to a contradiction between the petition forms, including the Secretary of State's form for minor party candidates, and other sections of the Election Code, and makes it impossible for candidates to determine what address is required. Accordingly, the Court concludes that Plaintiffs have stated a claim for unconstitutional vagueness, and the motion to dismiss Count IV will be denied.

## B.   **Res Judicata**

Having found that Count IV does state a claim, the Court must determine whether the

Libertarian Party's claim in Count IV is barred by res judicata, or claim preclusion.[10]  Essentially, Herrera argues that the Libertarian Party should have raised this claim in *Libertarian Party of New Mexico, et al. v. Vigil-Giron, et al.*,  Civ. No. 06-615 MV/ACT, and that by failing to do so, it no longer has the right to do so in this litigation.   In *Vigil-Giron*, both the Libertarian Party of New Mexico and four individual Libertarian candidates for office challenged the petition requirements of the New Mexico Election Code on the grounds that they violated their First and Fourteenth Amendment rights.

Under the doctrine of res judicata "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been* raised in that action." *Wilkes v. Wyo. Dep't of Employment Div. of Labor Standards*, 314 F.3d 501, 503-04 (10th Cir. 2002) (emphasis added) (quotation omitted). *See also Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998). "Under Tenth Circuit law, claim preclusion applies when three elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."  *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005).

Here, there is no doubt that the first and second requirements are met.  On September 18, 2006, in the *Vigil-Giron* case Chief Judge Martha Vazquez entered a Memorandum Opinion and Order as well as a Judgment granting summary judgment to the defendants on all of the Libertarian Party's claims.   The Tenth Circuit affirmed that decision in *Libertarian Party of New Mexico v. Herrera*, 506 F.3d 1303 (10th Cir. 2007).  Furthermore, the parties are identical: in both cases, the Libertarian Party has sued the Secretary of State of the State of New Mexico.  In *Vigil-Giron*, that person was Rebecca Vigil-Giron.  However, the Libertarian Party also sued Mary Herrera, who was

---

[10] Herrera does not claim that the other Plaintiffs' claims in Count IV are barred by res judicata—only that of the Libertarian Party.

then the Clerk for Bernalillo County, and its judgment was binding upon her as well.  *Vigil-Giron*, Civ. No. 06-615 MV/ACT, Doc. No. 24 at 1 n. 1 (D.N.M. Sept. 18, 2006) (unpublished).  Thus, all that remains is to determine whether there is sufficient identity of the cause of action in both lawsuits.

For the third element—same cause of action—the Tenth Circuit has "adopted the 'transactional approach' of the Restatement (Second) of Judgments § 24."  *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000).  "[A] cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence."  *Id.* (quotation and alteration omitted).  Under this approach, a cause of action encompasses "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."  *Wilkes v. Wyoming Dep't of Employment Div. of Labor Standards*, 314 F.3d 501, 504 (10th Cir. 2002) (quotation omitted).  "What constitutes the same transaction or series of transactions is 'to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' "  *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999) (quoting Restatement (Second) of Judgments § 24).  Under the transactional test, a claim should not be precluded merely because it is based on facts that arose prior to the entry of judgment in the previous action.  *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1149 (10th Cir. 2006).  Rather, "[u]nder the transactional test, a new action will be permitted only where it raises new and independent claims, not part of the previous transaction, based on the new facts."  *Id.* at 1150.

As described by Chief Judge Vazquez, in *Vigil-Giron* the Libertarian Party asserted that "the candidate petition requirement, considered in conjunction with the party recognition petition

requirement, violates their constitutional rights." *Vigil-Giron*, Memorandum Opinion and Order, Doc. No. 24 at 7. *See also Vigil-Giron*, Complaint, Doc. No. 1.[11] It is certainly related in time and space to the claims the Libertarian Party asserts here. The present lawsuit was filed just three years after *Vigil-Giron*, and in the same court. Both lawsuits arose from the same motivation—to seek a determination that the petition signature requirements of the Election Code are unconstitutional. The provisions that the Libertarian Party is challenging remain unchanged in every significant aspect since it filed its complaint in *Vigil-Giron*. Finally, it would have made a convenient trial unit if the Libertarian Party had brought these claim in *Vigil-Giron*. Thus, the third element of the doctrine of res judicata is satisfied as well.

The Court concludes that claim preclusion bars the Libertarian Party's claim in Count IV, and its claim will be dismissed with prejudice.

**V.    Count V: Discrimination Against Minor Parties and Minor Party Candidates**

In Count V of their Complaint, Plaintiffs allege that Sections 1-7-2 and 1-8-2(A) and (B) of the Election Code discriminate against minor parties and minor party candidates. Those sections require that in order to qualify as a political party eligible to place candidates on the ballot for a general election, a minor party must file a petition containing the signatures of voters totaling not less than one-half of one percent of the total number votes at the last preceding *general* election for the office of governor or President of the United States. Similarly, a minor party candidate for the office of U.S. Representative must file a nominating petition containing the signatures of voters totaling not less than one percent of the total number of votes cast in the district he seeks to represent at the last preceding *general* election for the office of governor or President of the United States.

---

[11] Thus, the claim brought by the Libertarian Party in *Vigil-Giro*n was almost identical to the claim in Count II-C of this case.

In contrast, the Election Code requires major party candidates for U.S. Representative to file a nominating petition containing the signatures of at least two percent of all votes cast for all of the party's candidates for governor at the last preceding *primary* election at which the party's candidate for governor was nominated. NMSA 1978, § 1-8-33.  Plaintiffs allege that voter turnout for general elections is greater than that for primaries, and that voter turnout is greater in years of Presidential elections than in years of gubernatorial elections.  Thus, they allege that ballot-access signature requirements for major party candidates are significantly less than those for minor party candidates. Plaintiffs further allege that the petition signature requirements imposed by the Election Code do not attempt to measure actual support for a candidate because they do not require signers to state that they support the party or candidate whose petition they are signing.

Based on the foregoing, Plaintiffs ask this Court to find that New Mexico's ballot access requirements unconstitutionally discriminate in favor of major parties and their candidates and against minor parties and their candidates in violation of the Equal Protection Clause, and unconstitutionally impairs the rights of minor parties to nominate candidates for both local and non-statewide offices.

The Court concludes that based on Supreme Court precedent, Plaintiffs have failed to state a claim for violation of their equal protection rights.  In *Jenness v. Fortson*, 403 U.S. 431 (1971), prospective candidates and registered voters mounted a constitutional challenge to Georgia's election law which required candidates from minor parties (known in that state as "political bodies") to file nominating petitions containing the signatures of electors, the number of which must be "not less than five per cent of the total number of electors eligible to vote in the last election for the filling of the office the candidate is seeking . . ." *Id*. at 433.  They claimed that this system denied minor party candidates their equal protection rights and abridged their freedoms of speech and

association under the First and Fourteenth amendments.  The Supreme Court disagreed, affirming

the district court's ruling that the Georgia election scheme was constitutionally valid.  The Court

pointed out that the Georgia statute freely provides for write-in votes, allows unaffiliated candidates

to run as independents, did not fix an unreasonably early filing deadline for minor party candidates,

and did not require minor parties to establish an elaborate primary election machinery.  *Id*. at 438.

In light of the foregoing, the Court found Georgia's 5% petition requirements to be constitutional.

*Id*. at 440.  Further, the Court observed:

> So far as the Georgia election laws are concerned independent
> candidates and members of small or newly formed political
> organizations are wholly free to associate, to proselytize, to speak, to
> write, and to organize campaigns for any school of thought they wish.
> They may confine themselves to an appeal for write-in votes. Or they
> may seek, over a six months' period, the signatures of 5% of the
> eligible electorate for the office in question. If they choose the latter
> course, the way is open. For Georgia imposes no suffocating
> restrictions whatever upon the free circulation of nominating
> petitions. A voter may sign a petition even though he   has signed
> others, and a voter who has signed the petition of a nonparty
> candidate is free thereafter to participate in a party primary. The
> signer of a petition is not required to state that he intends to vote for
> that candidate at the election.  A person who has previously voted in
> a party primary is fully eligible to sign a petition, and so, on the other
> hand is a person who was not even registered at the time of the
> previous election. No signature on a nominating petition need be
> notarized.

*Id*. at 438-39 (internal footnotes omitted).  The Court further observed that the requirement that a

major party nominee win a primary election effectively destroyed the equal protection claim.  *Id*.

at 440.  The *Jenness* court reasoned that by giving prospective candidates alternate routes to getting

their names printed on the general election ballot—whether by entering the primary of a major party

or circulating a petition as either an independent or minor party candidate, the state had provided

"two alternative paths, neither of which can be assumed to be inherently more burdensome than the

other." *Id*. at 441.

In *Jenness*, the Supreme Court contrasted the Georgia statutory scheme with that of Ohio, as described in *Williams v. Rhodes*, 393 U.S. 23 (1968).  The Court had found that the Ohio election law improperly given the Democratic and Republican parties an effective monopoly through a series of requirements that made it "virtually impossible for a new political party, even though it ha[d] hundreds of thousands of members, or an old party, which ha[d] a very small number of members, to be placed on the state ballot."  *Id*. at 24.  One of those requirements was an early deadline for filing petitions—early February in the year of the general election.  *Id*. at 27.  Further, Ohio's provisions regarding who could sign a nominating petition were so restrictive that, in effect, a minor party would have to find members who had never voted before to sign their petitions.  *Id*. at 25, n. 1.

In light of *Jenness* and *Williams*, Plaintiffs have not stated a claim that the Election Code is unconstitutional because it requires a minor party candidate for the office of U.S. Representative to file a nominating petition containing the signatures of voters totaling not less than one percent of the total number of votes cast in the district he seeks to represent at the last preceding *general* election for the office of governor or President of the United States.  *See also American Party of Texas v. White*, 415 U.S. 767, 788-89 (1974) (finding constitutional provision of the Texas election code, which required that in order to be on general election ballot, independent candidate must file written petitions containing notarized signatures equaling three to five percent of previous gubernatorial vote, even though persons who had voted in party primaries or had signed another petition were ineligible to sign).  Unlike the Georgia law found to be constitutional, the New Mexico Election Code requires minor party candidates to obtain signatures totaling only 1%, rather than 5%, of the number of voters in the general election–a substantially smaller burden. Like the Georgia

statutory scheme found to be constitutional in *Jenness*, the New Mexico Election Code allows unaffiliated candidates to run as independents, does not fix an unreasonably early filing deadline for minor party candidates[12], and does not require minor parties to establish an elaborate primary election machinery.  Also, the Election Code permits write-in candidates on the ballot, *see* NMSA 1978, § 1-12-19.1, and does not place severe restrictions on who may sign a candidate's petition.[13] Thus, Plaintiffs' claim alleging an equal protection violation stemming from petition signature requirements will be dismissed with prejudice.

Having concluded that Count V fails to state a claim, the Court need not reach the argument that the Libertarian Party's claim is barred by principles of res judicata.

**VI.    Right of Minor Parties to Nominate the Candidate of Their Choice**

In Count VI of the Complaint, Plaintiffs ask the Court to find that the Election Code "impermissibly interferes with the rights of minor parties to nominate the candidate of their choice."[14]  In support of their claim, Plaintiffs point to Section 1-8-18(A), which provides that no

---

[12] Section 1-8-2(B) of the Election Code provides that candidates nominated by minor parties must file their petitions "on the twenty-first day following the primary election in the year of the general election."  The primary election, in turn, is held on the first Tuesday in June. NMSA 1978, § 1-8-11.

[13] As previously discussed, under the Election Code all signers of petitions must be "voters" as defined by the statute who are either members of the party nominating the candidate or independents, who reside in the area the candidate seeks to represent, and who declare that they have not and will not sign any nominating petition for more persons than the number of candidates necessary to fill such office at the general election.  NMSA 1978, § § 1-8-30 and 1-8-50.  The New Mexico law does not require petition signatures to be notarized.  Compared to the restrictions in *Williams*, these are minor.

[14] Plaintiffs do not specify the constitutional right upon which they claim the Election Code impinges.

27

person may be nominated by a political party or have his name printed on the primary election ballot unless (1) he was affiliated with that political party on the date of the governor's proclamation for the primary, and (2) he was a resident of New Mexico on the date of the governor's proclamation. It appears that Section 1-8-18 applies to all candidates, whether from major parties, minor parties, or independents.  Plaintiffs also rely upon Section 1-8-2, which as previously discussed requires minor party candidates to file nominating petitions in addition to any qualifying petitions that their party may have filed under Section 1-7-2.

Herrera argues that this claim fails for the same reasons as Count V—that is, that the petition requirements for minor party candidates are a legitimate exercise of the state's power to ensure that its interest in limiting ballot access in order to ensure an orderly election process.  The Court agrees. For the same reasons set forth in Parts II-C and V of this Memorandum Opinion and Order, the Court concludes that the above provisions of the Election Code are constitutional.  The Supreme Court has recognized that, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974).  As pled by the Plaintiffs, the portions of the Election Code upon which Plaintiffs rely simply advance that interest and do not improperly impinge on Plaintiffs' constitutional rights, and therefore Count VI fails to state a claim for which relief may be granted.  Once again, the Court need not reach the issue of res judicata.


VII.   **Count VII: Minor Party Candidate Filing Restrictions**

In Count VII, Plaintiffs allege that Section 1-8-2(B) of the Election Code provides that minor party candidates must file their nominating petitions on the second Tuesday in July in the year of the general election, but makes no provision for the filing of such petitions before that date or on an

alternate date in the event that State offices are closed that day.  However, Plaintiffs have cited an old version of that section, which was amended in 2007 and now states that candidates nominated by minor parties must file their petitions "on the twenty-first day following the primary election in the year of the general election."[15]  Plaintiffs further allege that New Mexico has no compelling state interest in requiring that nominating petitions by minor party candidates be filed on one, and only one, particular day.  In their response [Doc. No. 36] to the motion to dismiss, Plaintiffs argue that minor party candidates could be adversely affected if an accident, natural disaster, or specially declared holiday closed State offices on the day in question, thereby preventing them from filing their petitions on the appointed day.  They further argue that in light of the statute, the Secretary of State has no authority to accept petitions on any other day.  As a result, Plaintiffs claim that this is an unconstitutional limitation on the filing of nominating petitions, though they do not allege the particular constitutional right at issue.

As currently pled, Count VII fails to state a claim for which relief may be granted.  Without specifying the constitutional right at issue, Plaintiffs have failed to give the Court a framework within which to analyze the nature of their claim and whether it satisfies Rule 12(b)(6).  Accordingly, the motion to dismiss Count VII will be granted, and the claim will be dismissed without prejudice.

## VIII.   Count VIII: Claim that § 1-8-18 Unconstitutionally Impairs the Rights of Parties

In Count VIII of the Complaint, Plaintiffs ask the Court to declare that Section 1-8-18(A)

---

[15] Based on their reliance on the superceded statute, Plaintiffs have alleged that in 2008, the Secretary of State violated the statute by requiring minor party candidates to file their petitions on June 24, 2008.  However, that date complied with the current statute, as the New Mexico primary had been held on June 3, 2008.

of the Election Code is unconstitutional (though they do not allege what provision of the constitution

it violates) and to enjoin the Secretary of State from enforcing it.  Section 1-8-18(A) provides:

> No person shall become a candidate for nomination by a political
> party or have his name printed on the primary election ballot unless
> his record of voter registration shows: (1) his affiliation with that
> political party on the date of the governor's proclamation for the
> primary election; and (2) his residence in the district of the office for
> which he is a candidate on the date of the governor's proclamation
> for the primary election or in the case of a person seeking the office
> of . . . United States representative, his residence within New Mexico
> on the date of the governor's proclamation or the primary election.

Plaintiffs allege, and Herrera admits, that this section precludes a person who is a non-resident, or

a resident who is a non-voter, at the time of the proclamation from being the nominee of a political

party for the office of U.S. representative.  However, political parties not previously qualified to

have their candidates' names included on the general election ballot are not required to file their

petitions until after the governor's proclamation, and the Election Code does not require the

Secretary of State to determine whether a party has qualified to do so prior to the proclamation.

Section 1-8-18 thus precludes a candidate who is a member of a political party from becoming the

candidate of another political party after the date of the governor's proclamation, and also precludes

parties from nominating candidates who are not registered to vote on the date of the proclamation.

Once again, Plaintiffs have alleged that this statute is unconstitutional, but they have failed

to identify the portion of the constitution that it offends.  This makes it impossible to determine

whether they have adequately stated a claim for a constitutional violation.  Accordingly, Count VIII

will be dismissed without prejudice.


**IX.**     **Count IX: Claim that § 1-7-2 Is Unconstitutional**

In Count IX of the Complaint, Plaintiffs rely upon Section 1-7-2 of the Election Code, which

provides for non-qualification of political parties that either do not run candidates for two successive general elections or "if the total votes cast for the party's candidates for governor or president of the United States . . . do not equal at least one-half of one percent of the total votes cast for the office of governor or president of the United States . . ."  It also states that voters who are registered members of a de-qualified party will be notified.  Section 1-7-2 applies equally to all political parties.  It further provides that parties decertified in this manner may requalify by complying with the filing requirements for political parties.  Plaintiffs allege that the foregoing provisions of the Election Code impair the ability of minor parties to expand.

Plaintiffs also allege that in the 2008 general election, the ballot offered a "straight party" voting option only for the Republican and Democratic parties, omitting the Green and Libertarian parties from that option, which impaired their ability to attract votes.  Plaintiffs ask the Court to declare that both Section 1-7-2 of the Election Code, as well as the "straight party" voting option, are unconstitutional, though they do not allege what aspect of the constitution those provisions violate.  They also ask the Court to direct the Secretary of State to reinstate the Libertarian and Green parties' "qualified" status.

This claim will be dismissed in part.  As with Count III-D, discussed supra, the Plaintiffs appear to have alleged enough to state an equal protection claim with regard to the "straight party" voting option which is available to some parties but not others.  However, the remainder of the claim regarding party disqualification will be dismissed, as Plaintiffs allege that Section 1-7-2(C) and (D) are "unconstitutional," but fail to allege what part of the constitution they violate, leaving the Court in no position to analyze whether they have properly stated a claim.

## X.   Count X: Hillis' Claim That Election Code Violates Voters' Rights

31

In Count X of the Complaint, Plaintiff Donald Hillis alleges that, in violation of the Fourteenth Amendment, the "ballot access requirement" of the New Mexico Election Code denies voters any meaningful choice of candidates and denies them the opportunity to participate in a meaningful way in the political process.  He alleges that the right to vote is heavily burdened if that vote may be cast only for one of two parties, and that the interests of the voters are not fully represented by the candidates of the two major parties.  He asks the Court to find that "all ballot access limitations established by the New Mexico Election Code unconstitutionally burden the fundamental right to vote."

As with Count I, discussed in Part I of this Memorandum Opinion and Order, *supra*, Count X of Plaintiffs' complaint fails to state a claim for which relief may be granted because it is vague and does not satisfy notice pleading requirements.  Though Plaintiff Hillis asks this Court to declare certain portions of the Election code unconstitutional and enjoin their enforcement, he fails to identify the provisions for which he seeks this declaratory and injunctive relief.   In other words, Plaintiff Hillis alleges a "wide swath of conduct" without informing Herrera of the actual grounds of the claim against her.  This fails to satisfy the standard set forth in *Twombl*y.  Count X will be dismissed without prejudice.


**IT IS THEREFORE ORDERED** that:

(1)     *Defendant's Motion to Dismiss* [Doc. No. 22] is **GRANTED IN PART** and **DENIED IN PART;**

(2)     Counts II-C, III-A, III-B, III-C, V, and VI of Plaintiff's Complaint are **DISMISSED WITH PREJUDICE**;

(3)     The Libertarian Party's claim in Count IV is **DISMISSED WITH PREJUDICE**, though

the other Plaintiffs' claims in Count IV remain;

(4)     Counts I, VII, VIII and X of Plaintiff's Complaint are **DISMISSED WITHOUT PREJUDICE**;

(5)     Counts II-B, IV, and IX are **DISMISSED IN PART**, as described above;

(6)     Plaintiffs' motions for summary judgment on Counts II-C, III-A, III-B, III-C, VII, and VIII [Doc. Nos. 28, 35, 38, 43, 51, and 54] are **DENIED AS MOOT**;

(7)     Plaintiffs' motion to exceed page limits [Doc. No. 25] and Plaintiffs' motion for leave to file a surreply [Doc. No. 55] are **GRANTED;**

(8)     Defendant's *Motion to Stay Briefing on Plaintiffs' Motions for Summary Judgment* [Doc. No. 63] is **DENIED AS MOOT**;

(9)     Defendant's *Motion to Strike Surreply* [Doc. No. 58] is **DENIED**.


_____
**UNITED STATES DISTRICT JUDGE**