IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALAN P. WOODRUFF, DANIEL FENTON,
LIBERTARIAN PARTY OF NEW MEXICO,
GREEN PARTY OF NEW MEXICO, and
DONALD HILLIS,

          Plaintiffs,

vs.                                                                                                  Civ. No.  09-449 JH/KBM

MARY HERRERA[1], in her official capacity
as New Mexico Secretary of State,

          Defendant.

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on four motions for summary judgment filed by the Plaintiffs: (1) *Plaintiff's [Daniel Fenton's] Motion for Summary Judgment on Count II-A* [Doc. No. 51]; (2) *Plaintiff's [Alan Woodruff's] Motion for Summary Judgment on Count II-B* [Doc. No. 27]; (3) *Plaintiffs' [Alan Woodruff and Green Party's] Motion for Summary Judgment on Count III-D* [Doc. No. 44]; and (4) *Plaintiff's [Libertarian Party and Green Party's] Motion for Summary Judgment on Count IV* [Doc. No. 88].  The Court has reviewed the briefs and exhibits filed by the parties and concludes that the first two motions should be granted, the third should be denied in part and the parties required to provide additional briefing, and the fourth should be granted in part and denied in part.

### UNDISPUTED MATERIAL FACTS

It appears that there are no disputed facts in this case.  The provisions of the New Mexico Election Code, NMSA 1978, § 1-1-1 et seq., speak for themselves, as do the Declaration of

---

[1] Defendant Herrera is not related to the undersigned United States District Judge.

Candidacy and petition forms that the Secretary of State requires of candidates.

## DISCUSSION

**I.    COUNT II-A**

In Count II-A of the Complaint, Plaintiffs rely upon Sections 1-8-18 and 1-8-12 of the Election Code, which together provide that a candidate for nomination by a political party must demonstrate, through voter registration records, that he is affiliated with that political party as of the date of the Governor's proclamation for the primary election.  Also, under the Election Code one must be registered to vote in order to run for office as an independent candidate.  *See* NMSA 1978, § 1-8-45(C).  Thus, Plaintiffs assert that the Election Code imposes an unconstitutional requirement for U.S. Representative not found in the U.S. Constitution—voter registration.  Plaintiff Daniel Fenton alone moves for summary judgment on this claim.

Herrera argues first that the Plaintiffs have not properly pled this claim.  The Secretary of State argues that Plaintiffs have failed to plead that Section 1-8-45(C), which sets forth requirements for independent candidates, also unlawfully requires voter registration.  The Court disagrees. Plaintiffs have pled that the Election Code imposes an unconstitutional requirement for office in the form of voter registration, and they have cited Section 1-8-18 of the Election Code, which applies to candidates for nomination by political parties.  Plaintiffs' complaint plainly puts the Secretary of State on notice as to the nature of their claim.  The fact that they do not cite Section 1-8-45(C)  is immaterial, as Herrera admits that under the Election Code one cannot run as either a party nominee or as an independent without registering to vote.  Failure to list every provision in the Election Code that undisputedly imposes the registration requirement does not undermine the claim.

Second, Herrera contends that these sections do not violate the Qualifications Clause,

arguing that voter registration is merely a qualification for running under the auspices of a political party, not a qualification to hold the office of U.S. Representative. The Court addressed this issue in its Memorandum Opinion and Order filed on December 8, 2009 [Doc. No. 103]. It is undisputed that under the Election Code, in order to run for U.S. Representative as either a major party, minor party, or independent candidate, one must be registered to vote. Under the Tenth Circuit's opinion in *Campbell v. Davidson*, 233 F.3d 1229 (10th Cir. 2000), it is unconstitutional to require that a person running for U.S. Representative be registered to vote. Accordingly, Plaintiff Daniel Fenton is entitled to summary judgment in his favor on Count II-A, and his motion will be granted.

## II.     COUNT II-B

In Count II-B, Plaintiffs rely upon Sections 1-9-29 and 1-8-48 of the Election Code, which require major party candidates and independent candidates, respectively, to file a "Declaration of Candidacy" form with the Secretary of State. Plaintiffs allege, and Herrera admits, that the Election Code contains no such requirement for minor party candidates. However, the Secretary of State still requires that candidates from minor parties fill out a form titled "Declaration of Candidacy—Minor Party," which requires the candidate to identify his address and to establish his affiliation with the minor party, both in accordance with his or her voter registration card. Section 1-1-7.1 provides that a candidate's "residence shall be resolved in favor of that place shown on the person's certificate of registration as his permanent residence." The Declaration of Candidacy form also requires the candidate to identify the office for which he is running and to swear that he will be eligible and legally qualified to hold that office at the beginning of its term. Plaintiff Alan Woodruff now moves for summary judgment in his favor on Count II-B.

In its December 8, 2009 Memorandum Opinion and Order regarding Herrera's motion to dismiss, the Court dismissed Count II-B *in part* for failure to state a claim. The Court held that the

absence of a statutory provision in the Election Code requiring minor party candidates to fill out a Declaration of Candidacy did not in itself render the form unconstitutional. The requirement that minor party candidates fill out a Declaration of Candidacy is unlike the situation presented in *Libertarian Party of Ohio v. Brunner*, 567 F. Supp. 2d 1006 (S.D. Ohio 2008), on which Plaintiffs rely. In *Brunner*, the Ohio Secretary of State unilaterally enacted an entire system of ballot access procedures that amounted to a "significant departure" from the Ohio legislative scheme. That is not the case here, where the Secretary of State has merely applied the same Declaration of Candidacy requirement to minor party candidates that the Legislature has already applied to all other candidates. That aspect of the claim already having been dismissed, Woodruff's motion for summary judgment in his favor now pertains only to his claim in Count II-B that the portions of the Declaration of Candidacy that require voter registration are unconstitutional.

For the same reasons previously discussed by the Court, it is unconstitutional under the Qualifications Clause to require that a candidate be registered to vote in order to run for U.S. Representative. Therefore, to the extent that the Declaration of Candidacy form requires that a candidate must be registered to vote as a qualification to get on the ballot, the Court founds that it is unconstitutional. Plaintiff Alan Woodruff's motion for summary judgment on the remaining portion of Count II-B will be granted.

### III.    COUNT III-D

In Count III-D, Plaintiffs allege that the Secretary of State identifies on the ballot the party affiliation of those candidates who are nominated by "qualified" political parties, including major parties, while those candidates who are members of any political party that has not independently qualified for ballot access are identified on the ballot as "independent." They allege that identification of candidates by party affiliation is misleading and confusing to voters, and that the

practice of giving voters the option to cast a "straight party" vote encourages voting for candidates based solely on party affiliation without regard to a candidate's qualifications.  Plaintiffs allege that the "straight party" voting option is unfairly prejudicial to candidates who are members of minor parties.  In Count III-D, unlike the other portions of Count III, Plaintiffs allege that straight party voting is unconstitutional under both the Elections Clause and the Equal Protection Clause of the Fourteenth Amendment.  Now, Plaintiffs Alan Woodruff and the Green Party of New Mexico move for summary judgment on this claim, arguing that both the straight party voting option and the practice of identifying candidates for federal office by party affiliation are unconstitutional.[2]

### A.     Straight Party Voting Option

####     1.     Elections Clause

First, Plaintiffs argue that the straight party voting option violates the Elections Clause[3] when applied to candidates for federal office.  In essence, they contend that under that clause, only the state legislature may establish any rules governing the manner in which elections for federal office are conducted.  Because the New Mexico Election Code does not expressly permit straight party voting, they contend that the Defendant lacks the authority to offer voters that option.  In support of their argument, they again rely on *Libertarian Party of Ohio v. Brunner*, 567 F. Supp. 2d 1006

---

[2] In their motion, Plaintiffs also argue for the first time that "New Mexico's statute requiring that major party candidates be listed on the ballot ahead of minor party candidates is unconstitutional."  Doc. No. 44 at 3.  Plaintiffs utterly failed to plead this aspect of the claim in their complaint, which contains no hint of an allegation that the order in which the Secretary of State places the candidates' names on the ballot is a matter in dispute.  Stated another way, the Plaintiffs now ask the Court to grant them relief that they did not ask for in their Complaint—that is, they ask the Court to declare that the order of names on the general election ballot is improper. Therefore the Court will not consider it on a motion for summary judgment.

[3] The Elections Clause of the United States Constitution can be found in Article I, Section 4.  It states: "The Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof."

(S.D. Ohio 2008), a case that this Court has previously discussed above and in the Memorandum Opinion and Order filed December 8, 2009. Again, this case is distinguishable from *Brunner*, a decision that is not binding upon this Court, in which the Sixth Circuit had invalidated Ohio's statutory provisions dealing with ballot access for minor parties, and the Secretary of State had filled the gap by enacting an entirely new ballot access system for those groups. The *Brunner* court found those interim provisions to be unconstitutional. Here, the straight party voting option is not an issue of ballot access, nor is it an entire system of such access. Rather, it is one practice by the Secretary of State that is supplemental to the entire Election Code and the ballot access system that it sets forth for minor parties.

          2.        Equal Protection Clause

According to the Equal Protection Clause of the Fourteenth Amendment, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This Clause "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). Where a government action does not burden a fundamental right or target a suspect class, equal protection claims are evaluated under the rational-basis standard of review. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998). However, if a statute classifies by race, alienage, or national origin, or if the government action interferes with fundamental rights, it will be subject to strict scrutiny.

Unlike the portion of the claim based upon the Election Clause, discussed *supra*, in which Plaintiffs seem to allege that the straight party voting option is unconstitutional in any form, in this part of the claim Plaintiffs argue that the straight party voting option violates the Equal Protection Clause because the Secretary of State offers it only to the Democratic and Republican Parties, and not to qualified minor parties. Thus, Plaintiffs contend that straight party voting is improper when

6

offered for some parties and not others. They rely upon the Tenth Circuit's decision in *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996), in which the court stated that "an equal protection violation occurs when the government treats someone differently than another who is similarly situated." Plaintiffs argue that minor parties that have candidates listed on the ballot as the nominee of their parties are similarly situated in all material respects to the two major parties. They contend that the use of a straight party voting option for Republican and Democratic candidates, but not for candidates from other parties, is not politically neutral and violates the equal protection rights of minor parties. In her response brief, the Secretary of State takes issue with the applicability of the cases that Plaintiffs cite, but she does not dispute Plaintiffs' central argument, which is that qualified minor parties with candidates on the ballot are similarly situated to the two major parties.[4]

Entirely missing from the briefing by both the Plaintiffs and the Secretary, however, is any discussion of whether the Court should analyze this claim under the rational basis or strict scrutiny standard, and whether or not the Secretary's practice allowing straight party voting for major parties only, and not qualified minor parties, satisfies the applicable standard. Without that discussion, the Court cannot rule on this portion of the motion for summary judgment. Accordingly, the Court orders the parties to present supplemental briefing on those issues as further ordered below and will withhold ruling on this portion of the motion for summary judgment.

### B.    Identification of Candidates by Party Affiliation

---

[4] Herrera also finds fault with Plaintiffs for pointing out that in the 2008 general election, she allowed straight party voting only for the two major parties. Herrera suggests that this has nothing to do with the upcoming 2010 election for which Plaintiffs seek relief. Herrera's argument is puzzling. As straight party voting is not codified in the Election Code, but rather the apparent policy and practice of the Secretary of State, then it is eminently reasonable for the Plaintiffs to plead Herrera's past practice in this regard and to assume that, unchallenged, it will continue in the future. Herrera does not state an intention to alter her practice of permitting straight party voting only for the Democratic and Republican parties.

It is undisputed that the Secretary of State identifies candidates on the ballot by their party affiliation only if that party is a "qualified" party under the Election Code. This practice of candidate identification is not mandated by the Election Code, but is rather the practice of the Secretary of State. Plaintiffs take issue with this practice on two grounds. First, they contend that it violates the Elections Clause because only the legislature, and not the Secretary of State, may issue any rule regarding the conduct of federal elections, again relying upon *Libertarian Party of Ohio v. Brunner*, 567 F. Supp. 2d 1006 (S.D. Ohio 2008). This is substantially the same argument that Plaintiffs raised with regard to Counts II-B and III-D, *supra*, as well as in response to the Defendant's motion to dismiss. For the reasons set forth above and in the Memorandum Opinion and Order filed contemporaneously with this order, the Court finds this argument to be without merit and this case to be distinguishable from *Brunner*.

Second, Plaintiffs have pled an equal protection claim based on Herrera's practice of listing on the ballot the party affiliation of only those candidates whose parties are "qualified" under the Election Code. They claim that this is unfair to those candidates who are members of parties who have not met the qualification requirements under the Election Code. However, it is well established that the Fourteenth Amendment guarantee of equal protection "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Here, the Plaintiffs have failed to show that candidates of "non-qualified" parties are similarly situated to candidates from those parties that have qualified (as either major or minor parties) under the Election Code. Indeed, they are not, for those parties have received the required numbers of votes or presented the required number of petition signatures under the Election Code, while parties that are not qualified have failed to do so. Thus, non-qualified parties and their candidates are not similarly situated to those parties whose candidates Herrera does identify by party

affiliation, and therefore the equal protection claim fails on that basis.

Furthermore, this case is similar to *Dart v. Brown*, 717 F.2d 1491 (5th Cir. 1983), where the Fifth Circuit upheld a Louisiana statute which permitted the political party affiliation of recognized party candidates to be printed on the ballot next to their name but required the space to be left blank for candidates not affiliated with recognized political parties. Dart's political party affiliation, Libertarian, was not placed on the ballot because the Libertarian party was not a recognized political party in Louisiana. The Fifth Circuit upheld the Louisiana statute because the statute did not prevent Dart from having his name placed on the ballot.[5]

Plaintiff's motion for summary judgment on this portion of Count III-D will be denied.

## IV.    COUNT IV

In Count IV of their Complaint, the Plaintiffs ask this Court to find that the terms "voter" and "address" as used in Sections 1-7-2(A) and 1-8-2(B) are unconstitutionally vague and that the nominating petition requirements contained in those sections are unenforceable. They further ask the Court to enjoin the Secretary of State from enforcing those provisions. The Libertarian Party and the Green Party both have moved for summary judgment in their favor on Count IV of the Complaint. However, in its Memorandum Opinion and Order regarding Herrera's motion to dismiss, this Court dismissed the Libertarian Party's claims under Count IV based on *res judicata*.

---

[5] The *Dart* court did say that "[p]erhaps the inability of a candidate affiliated with a 'minor' party to have the ballot designate his party affiliation, while the respective party affiliations of candidates affiliated with 'major' parties do appear on the ballot, diminishes the former's chances of success in any given election. If this were true to any really significant extent, the lack of party designation *might* arguably be said to impair the ability to cast a *meaningful* vote, or to *meaningfully* associate for the enhancement of political beliefs. But the truth of such a proposition is by no means self-evident, and there is no evidence in this record, and appellants point to no recognized literature or facts of common knowledge, so demonstrating." 717 F.2d at 1504-05 (emphasis in original). Similarly, Plaintiffs in this case have come forward with no evidence to make that showing.

Thus, the current motion for summary judgment on Count IV is relevant only as to the Green Party.

Plaintiffs allege that the Election Code provides that persons signing the nominating petitions required for minor parties declare that they are "*voters* of New Mexico." *See* NMSA 1978, § 1-7-2(A) (emphasis added).[6] At the same time, Herrera requires minor parties to use a form of petition in which signatories must verify that they are "qualified electors" of a particular New Mexico county, and thus varies from the language of Section 1-7-2(A). The terms "voter" and "qualified elector" are both defined in the Election Code. A "qualified elector" is "any person who is qualified to vote under the provisions of the constitution of New Mexico and the constitution of the United States," NMSA 1978 § 1-1-4, while as previously stated above, a "voter" is "any qualified elector who is registered under the provisions of the Election Code." *Id*. at § 1-1-5. Thus, one may be a qualified elector without being a voter.

Further, Plaintiffs allege that while Section 1-8-2(B) requires signers of petitions for minor candidates provide their "address," it does not specify whether they must provide their address of current residency or their address as registered to vote. Section 1-8-31(B), which discusses signatures to be counted for nominating petitions, does provide that "[a] person who signs a nominating petition shall indicate his residence as his address. If the person does not have a residential address, he may provide his mailing address." However, the Secretary of State's nominating petition form, set forth in Section 1-8-30(C), requires petition signers to identify their address "as registered." Again, the petition form that the Secretary of State has adopted for minor party candidates is identical to that prescribed for major party candidates in Section 1-8-30.

---

[6] Similarly, Section 1-8-2(B) of the Election Code provides that minor party candidates much file "a petition containing a list of signatures and addresses of *voters*. . ." (emphasis added).

The first issue before the Court is to determine the nature of the claim on which the Green Party seeks summary judgment. In their Complaint, the Plaintiffs pled Count IV as a claim seeking to declare Sections 1-7-2 and 1-8-2 as void for unconstitutional vagueness. Now, for the first time in its briefs in support of the motion for summary judgment, the Green Party argues that the minor party petition form published by the Secretary of State violates the Elections Clause in the U.S. Constitution. The Complaint gives no hint of this claim, and the Court will not consider it here. The motion for summary judgment will be denied in part.

The Green Party's claim for unconstitutional vagueness presents a more complicated question. The Court agrees with the Green Party that the Election Code draws a distinction between voters and qualified electors and that it clearly provides that only voters may sign nominating petitions for minor political parties. § 1-8-2(B). The Court also agrees with the Green Party that by stating that it must be signed by qualified electors, not voters, the Secretary of State's petition form for minor parties is at odds with Section 1-8-2(B) of the Election Code. The problem for this Court is that in Count IV of the Complaint, the Green Party has not asked the Court to declare that the Secretary of State's form is invalid because it is at odds with the statute. Instead, it has asked the Court to declare Sections 1-7-2(A) and 1-8-2(B) unconstitutionally vague and to enjoin the Secretary of State from enforcing their requirements. However, the definitions of voter and qualified elector in those provisions are not vague. Indeed, they are quite clear, and therefore the Court declines to declare them unconstitutionally vague. Rather, the confusion arises from the Secretary of State's use of a petition form that calls for signatures from qualified electors rather than voters, in clear contravention of the Election Code. The Secretary of State's improper form does not render the statute vague. Accordingly, the Court will deny this aspect of the motion for summary judgment.

However, the Election Code itself is internally inconsistent with regard to what address the

11

signer of a petition must provide. While Section 1-8-31(B) requires a petition signer to provide either a residential or mailing address, Section 1-8-30(C) (which contains the same language as the form used by the Secretary of State for minor party candidates) requires signers to identify their address "as registered." It is undisputed that these addresses may vary, and therefore the Election Code itself—and not just the Secretary of State's form, which in turn is set forth in the Election Code—is internally inconsistent and vague with respect to the address requirement it imposes on signers of petitions. That requirement is one which is a prerequisite to a candidate's right to appear on the ballot or a party's ability to "qualify" as a party under the Election Code.

Herrera's responds to this issue by arguing that as a practical matter, in most cases a voter's registered address will be the same as his residential address. That does not speak to the issue, however, which is how to deal with cases in which the two addresses are not the same. There the Election Code provides no guidance. She also suggests that the Green Party should use the petition form she has promulgated, which calls for the address as registered, but have each signer write down their address of residence. However, parties and candidates gathering signatures for their petitions should not be forced to guess at which address is actually required from signers. Nor should they be forced to guess at which address to use and then wait for a court challenge to their signatures, and only then—most likely after the election has taken place—be permitted to argue that their signatures should be counted because one part of the statute seems to contemplate their validity, while another does not.

Thus, the Court concludes that with regard to whether signers of petitions must state their address of residence or their address as registered, the Election Code is internally inconsistent and unconstitutionally vague. To that extent, the Green Party's motion for summary judgment will be granted in part.

**IT IS THEREFORE ORDERED** that:

(1)   *Plaintiff's Motion for Summary Judgment on Count II-A* [Doc. No. 51] is **GRANTED**;

(2)   *Plaintiff's Motion for Summary Judgment on Count II-B* [Doc. No. 27] is **GRANTED**;

(3)    *Plaintiffs' Motion for Summary Judgment on Count III-D* [Doc. No. 44] is **DENIED IN PART**, and the Court withhold's ruling on the remainder of Count III-D at this time;

(4)   The Green Party of New Mexico's *Motion for Summary Judgment on Count IV* [Doc. No. 88] is **GRANTED IN PART and DENIED IN PART**; and

(5)   No later than December 21, 2009, the parties must file briefs, no more than ten pages in length, regarding their equal protection claim in Count III-D as discussed above—specifically, whether the Court should apply the rational basis standard or strict scrutiny, and whether the Secretary of State's actions satisfy the applicable standard.

_____
**UNITED STATES DISTRICT JUDGE**