IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALAN P. WOODRUFF, DANIEL FENTON,
LIBERTARIAN PARTY OF NEW MEXICO,
GREEN PARTY OF NEW MEXICO, and
DONALD HILLIS,

                **Plaintiffs,**

vs.                                  **Civ. No.  09-449 JH/KBM**
                                        *consolidated with*

MARY HERRERA, in her official capacity    **Civ. No. 10-123 JH/KBM**
as New Mexico Secretary of State,          **Civ. No. 10-124 JH/KBM**

                **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Plaintiffs' Emergency Motion for Ex Parte Entry of Preliminary Injunction*, filed by Alan P. Woodruff and the Green Party of New Mexico as Doc. No. 5 in Civ. No. 10-123 JH/KBM, which has been consolidated into Civ. No. 09-449 JH/KBM.  The Court held a hearing on the motion, at which Plaintiff Alan Woodruff appeared pro se, along with counsel for the Green Party of New Mexico.  Defendant Mary Herrera was also represented by counsel.

## DISCUSSION

The Supreme Court has observed "that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quotation omitted).  Similarly, the Court of Appeals for the Tenth Circuit has noted that "'a preliminary injunction is an extraordinary remedy, [and thus] the right to relief must be clear and unequivocal.'" *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *SCFC ILC, Inc. v. Visa*

*USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)).

In order for a party to be entitled to a preliminary injunction, that party must show "(1) he or she will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits." *Id*. at 1258 (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003)) (alterations omitted).

However, under Tenth Circuit law, the already heavy burden to demonstrate each of these four factors is even heavier when a party seeks one of three types of disfavored preliminary injunctions: "(1) a preliminary injunction that disturbs the status quo; (2) a preliminary injunction that is mandatory as opposed to prohibitory; and (3) a preliminary injunction that affords the movant substantially all the relief he may recover at the conclusion of a full trial on the merits." *SCFC ILC*, 936 F.2d at 1098-99. Because each of these types of preliminary injunction is at least partially at odds with the historic purpose of the preliminary injunction—that is, the preservation of the status quo pending a trial on the merits—the Tenth Circuit has held that to obtain such an injunction the movant must demonstrate that any preliminary injunction fitting within one of the disfavored categories "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course. Furthermore, because a historically disfavored preliminary injunction operates outside of the normal parameters for interim relief, movants seeking such an injunction are not entitled to rely on [the Tenth] Circuit's modified-likelihood-of-success-on-the-merits standard. Instead, a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on [the Tenth Circuit's] modified

2

likelihood-of-success-on-the-merits standard." *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft,* 389 F.3d 973, 975-76 (10th Cir. 2004) (en banc). Here, the Plaintiffs ask the Court to change the status quo by compelling the Secretary of State to recognize the Green Party of New Mexico as a qualified major party for the 2010 election and requiring her to include Green Party candidates on the election ballot. Thus, the relief Plaintiffs requests falls under both the first and second categories above, requiring them to meet the heightened burden described in *O Centro.*

The Court concludes that the Plaintiffs have failed to meet that burden. First, Plaintiffs have failed to show that there is a substantial likelihood of success on the merits. As the Court has discussed in its previous rulings, and as the Tenth Circuit has agreed, the form of relief that Plaintiffs seek—that the Court order the Secretary of State as a qualified, major party without requiring it to meet any of the signature requirements set forth in the Election Code—is unreasonable. This is particularly true because the underpinnings of Plaintiffs' argument are faulty. Plaintiffs argue that as of the 2008 general election, the Green Party of New Mexico meets the requirements of a "major political party" under the Election Code, NMSA 1978, § 1-1-9(A), which requires that its candidates must have received 5% or more of the total number of votes cast at the last preceding general election for the office of governor or president of the United States. However, the Green Party of New Mexico had no such candidate in the 2008 general election. Instead, Plaintiffs seem to pin their hopes on the fact that Rick Glass, a Green Party candidate for the New Mexico Public Regulatory Commission, received more than 5% of the total number of votes cast for that position. *See* Doc. No. 5, Plaintiffs' Motion for Preliminary Injunction, at 2, ¶ 9 and at 9. This does not satisfy the statutory requirements for qualification as a major party, however, because the party was simultaneously disqualified as a party under § 1-7-2(C). Thus, the alleged conundrum that Plaintiffs attempt to portray for the Green Party candidates as one of uncertainty regarding petition signature

requirements, *id*. at 3-4,  does not exist, because despite the performance of Glass, the Green Party was disqualified.  This is clear from the face of the Election Code and cannot reasonably have led to any confusion by the Green Party or its candidates.

Plaintiffs also argue that Section 1-7-2(C) regarding decertification of parties, the provision under which the Green Party of New Mexico was decertified,  is unconstitutional.  Specifically, they claim that it violates their rights to equal protection and freedom of association, as well as their right to substantive and procedural due process.  This provision, which applies to all political parties, provides for non-qualification of political parties that either do not run candidates for two successive general elections or "if the total votes cast for the party's candidates for governor or president of the United States . . . do not equal at least one-half of one percent of the total votes cast for the office of governor or president of the United States . . ."  It also states that voters who are registered members of a de-qualified party will be notified.  Again, the Court finds that Plaintiffs have failed to meet their heavy burden of a high likelihood of success on the merits.  While Plaintiffs argue that "by definition", § 1-7-2(C) will never result in the loss of qualified status by one of the major parties, Doc. No. 5 at 10, that unsupported allegation lacks merit.  It is entirely possible, at least in theory, for any party to be decertified under that provision, as it applies equally to all parties.  Stated another way, § 1-7-2(C) treats major and minor parties alike in terms of the requirements for certification, and the consequences of not meeting those requirements at the polls.  And as the Defendant has pointed out, what Plaintiffs are complaining about is not the statute, or disparate treatment by the New Mexico Legislature, but rather the actions of New Mexico voters in supporting the major political parties.  Thus, for purposes of an equal protection analysis, there is no unequal treatment of major and minor parties.

Furthermore, the fact that once decertified, a party must go through the recertification

4

procedures set forth in the Election Code does not impair the freedom of association of the members of the party.  Plaintiffs make no showing to support their heavy burden to demonstrate that decertification makes it more difficult to associate with the groups or individuals of their choice.

Next, Plaintiffs argue that Section 1-7-2(C) violates their right to substantive due process because it limits the ability of citizens to create and develop new parties.  As this Court has held on prior occasions, the Election Code's procedures for certification of parties and for ballot access for individual candidates, including petition signature requirements, are not unconstitutional (beyond the voter registration requirement for candidates or the vague requirements regarding a petition signer's address), nor do they violate due process by imposing undue burdens upon minor parties. Furthermore, Plaintiffs' due process claims should be analyzed through the balancing test set forth in *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).  *Anderson* dealt with a due process claim, and there is widespread recognition that the *Anderson* test is appropriate for both First and Fourteenth Amendment challenges to state election laws.  *See, e.g., Crawford v. Marion County Election Board*, 553 U.S. 181, 128 S. Ct. 1610, 1616 (2008).  However, Plaintiffs have failed to attempt an analysis under *Anderson* and have not met their burden to show that they are entitled to a preliminary injunction.  At most, the Plaintiffs have disputed the legislative wisdom of Sections 1-7-2(C) and 1-1-9(A). That is an insufficient basis on which to find a statute in violation of the Due Process clause.  Plaintiffs fail to explain how these provisions of the Election Code are fundamentally unfair. While they argue that the support for a party should not be judged from the performance of its presidential candidate in a election, it is indisputable that in a presidential election, that office dominates the ballot. The same is true for gubernatorial elections.  It is entirely reasonable for a State to judge the support of a party based on the votes received by its headlining candidate.  Even if this is not the best possible system, as Plaintiffs contend, the Constitution does not demand so

much. The Due Process clause will only operate to invalidate Section 1-7-2(C) if Plaintiffs can demonstrate that it treats them unfairly, and this they have failed to do, at least to the degree required to obtain a preliminary injunction.

Plaintiffs contend that § 1-7-2(C) violates their right to procedural due process as well.  In essence, they contend that the manner in which the Defendant implements the statute is unfair to them.  First, they contend that the statute is self-activating and fails to provide them with any "process" whatsoever.  Doc. No. 5 at 16.  However, as Defendant correctly points out, the decision making process is the election itself, in which the voters decide whether to vote for a party and, by extension, whether the party should remain certified.  Next, Plaintiffs argue that the statute fails to specify when the Secretary of State must provide notice to parties that they have been decertified, and that without such notice such parties have no way of knowing that they have been decertified. Again, the Court finds that this argument is unpersuasive.  In truth, in order to determine whether it has been decertified, a party need only know whether its gubernatorial or presidential candidate, as the case may be, received one-half of one percent of the total vote for the relevant office in the general election. This information is publicly available.  Similarly, a party knows, as a matter of course, whether it has failed to place a candidate on the ballot in two successive elections.  In either case, it is a simple matter for a party to make its own determination regarding its status.  It is difficult to see how a party's procedural due process rights are infringed when it can so easily determine its status on its own, in most cases within a few days of an election.

Having concluded that Plaintiffs have not met their heightened burden to show a likelihood of success on the merits, the Court need not reach the other elements of a preliminary injunction. Rather, the Court concludes that the motion should be denied.

**IT IS THEREFORE ORDERED** that *Plaintiffs' Emergency Motion for Ex Parte Entry of*

*Preliminary Injunction*, filed by Alan P. Woodruff and the Green Party of New Mexico as Doc. No.

5 in Civ. No. 10-123 JH/KBM, is hereby **DENIED**.


_____

**UNITED STATES DISTRICT JUDGE**

7