IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALAN P. WOODRUFF, DANIEL FENTON,
LIBERTARIAN PARTY OF NEW MEXICO,
GREEN PARTY OF NEW MEXICO, and
DONALD HILLIS,

          Plaintiffs,

vs.                                                              Civ. No.  09-449 JH/KBM
                                                                 *consolidated with*
MARY HERRERA, in her official capacity           Civ. No. 10-123 JH/KBM
as New Mexico Secretary of State,                    Civ. No. 10-124 JH/KBM

          Defendant.


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on *Plaintiffs' Motion for Attorneys' Fees and Costs* [Doc. 272], as well as *Plaintiffs' Motion for Expedited Ruling on Motion for Attorneys' Fees and Costs* [Doc. 273]. After reviewing the motion for attorney's fees and costs, the response, the reply, and the supplemental reply, the Court concludes that the motion should be granted in part as further described herein. The motion to expedite will be denied.

**LEGAL STANDARD**

Section 1988(b) codifies an exception to the "American Rule" in which each party ordinarily must pay its own attorneys' fees. Specifically, 42 U.S.C. § 1988(b) creates a fee-shifting regime in which prevailing civil rights litigants can recoup the litigation costs stemming from their successful claims. The statute provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *Id*. Underlying this provision is the notion that a successful civil rights plaintiff serves "as a private

attorney general, vindicating a policy that Congress considered of the highest priority." *Fox v. Vice*, ––U.S. ––, 131 S.Ct. 2205, 2213 (2011) (quotation omitted).

"[A]warding counsel fees to prevailing plaintiffs in" civil rights litigation against government entities and officials "is particularly important and necessary if [f]ederal civil and constitutional rights are to be adequately protected." *City of Riverside v. Rivera*, 477 U.S. 561, 577 (1986) (quotation marks and citation omitted). Thus, despite the statute's grant of discretion, the Supreme Court has advised that "fees should be awarded [to successful § 1983 litigants] . . . unless special circumstances would render such an award unjust." *Kentucky v. Graham*, 473 U.S. 159, 164 (1985) (citation omitted). Accordingly, a "district court's discretion to deny fees to a prevailing plaintiff is quite narrow." *Dahlem ex rel. Dahlem v. Bd. of Educ. of Denver Pub. Schs.*, 901 F.2d 1508, 1514 (10th Cir. 1990) (quotation omitted). Only certain circumstances warrant a significant reduction or outright denial of attorneys' fees to a prevailing civil rights litigant. "Courts have universally recognized that [the] special circumstances exception is very narrowly limited." *Doe v. Bd. of Educ. of Baltimore Cnty.*, 165 F.3d 260, 264 (4th Cir. 1998) (quotation marks and citation omitted). Indeed, "[o]nly on rare occasions does a case present such circumstances. . . ." *Id.* See also, e.g., *DeJesus Nazario v. Morris Rodriguez*, 554 F.3d 196, 200 (1st Cir. 2009) (stating that the special circumstances justifying denial of attorneys' fees are "few and far between").

"[T]here are two elements in deciding whether to award attorney's fees. First, the party seeking fees must qualify as a 'prevailing party.' Second, the fee itself must be 'reasonable.'" *Phelps v. Hamilton*, 120 F.3d 1126, 1129 (10th Cir. 1997) (quoting 42 U.S.C. § 1988(b)).

To be considered a prevailing party, a litigant must have "receive[d] at least some relief on the merits of his claim" amounting to "a court-ordered change in the legal relationship

2

between the plaintiff and the defendant." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603-04 (2001) (internal quotation marks and alterations in original omitted). Thus, if a defendant voluntarily changes its conduct during the course of litigation, thereby mooting the plaintiff's case, the plaintiff will not be considered a prevailing party even though he or she may have obtained the relief sought. *Id*. at 605.

In *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782 (1989), the Supreme Court held that in order to recover fees in a civil rights case, "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." 489 U.S. at 792. The Court emphasized that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Id*. at 792-793. Under this test, the plaintiffs in *Garland* were prevailing parties because they "obtained a judgment vindicating [their] First Amendment rights [as] public employees" and "materially altered the [defendant] school district's policy limiting the rights of teachers to communicate with each other concerning employee organizations and union activities." *Id*. at 793. Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, *Hewitt v. Helms*, 482 U.S. 755, 760 (1987), or comparable relief through a consent decree or settlement, *Maher v. Gagne*, 448 U.S. 122, 129 (1980). Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. *See Hewitt,* 482 U.S. 755, 763-64 (1987). Otherwise the judgment or settlement cannot be said to "affec[t] the behavior of the defendant toward the plaintiff." *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (quoting *Hewitt*, 482 U.S. at 761). Only under these circumstances can civil rights litigation effect "the material alteration of the legal relationship of the parties" and thereby

transform the plaintiff into a prevailing party. *Garland*, 489 U.S., at 792-93. In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

Furthermore, a civil-rights plaintiff need not succeed on every claim in order to recover attorney's fees. Success on a single claim is sufficient to become a prevailing party. *See McQueary v. Conway*, 614 F.3d 591, 603 (6th Cir. 2010). When, however, a plaintiff's unmeritorious claims are "based on different facts and different legal theories" than her meritorious claims, a court must treat them "as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim[s]." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). In contrast, if a plaintiff has made both meritorious and unmeritorious claims that "arise out of a common core of facts, and involve related legal theories," a court should not exempt from its fee award the hours spent on the claims that did not succeed. *Id*. at 789. Instead, the court should consider, as its ultimate guide, "the degree of success obtained." *Id*. (quoting *Hensley*, 461 U.S. at 436). To determine whether two claims are related, a court may find it helpful to consider "whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from" that which gave rise to the plaintiff's successful claim. *Jordan v. City of Cleveland*, 464 F.3d 584, 603 (6th Cir. 2006) (internal quotation marks omitted).

"A court will generally determine what fee is reasonable by first calculating the lodestar—the total number of hours reasonably expended multiplied by a reasonable hourly

rate[1]—and then adjust the lodestar upward or downward to account for the particularities of the suit and its outcome." *Phelps*, 120 F.3d at 1131.

## DISCUSSION

Plaintiffs request recovery of their attorney's fees for several claims raised in the consolidated cases. Specifically, Plaintiffs seek to recover for 773.65 hours of work at $250 per hour, totaling $185,430.50 in attorney's fees. Defendant disputes Plaintiffs' fee request, arguing that they are not prevailing parties and therefore should receive no fees for some claims, or that they only partially prevailed and should receive reduced fees for other claims.

Plaintiffs also move to recover their costs, a request which Defendant does not oppose. The Court addresses both issues below.

### I.     ATTORNEY'S FEES

#### A.     "General Activities"

As the Court understands Plaintiffs' motion, they are seeking to recover attorney's fees for "general activities" related only to those claims, enumerated individually below, on which Plaintiffs believe they prevailed in this litigation either through Court action or legislative action. It is the Court's understanding that the fees for "general activities" that Plaintiffs seek are not fees for work on other claims in the case not addressed herein. *See* Doc. 272 at 2 ("Plaintiffs are limiting their request for fees to claims on which they actually obtained the relief they have sought . . ."); Doc. 272 at 10 n.16 ("Plaintiffs are not seeking fees with respect to any of the claims on which they did not prevail—either directly or indirectly.").[2]

---

[1] Here, both counsel for Plaintiffs, Alan Woodruff and M.J. Keefe, request that they receive fees at an hourly rate of $250. Defendant does not dispute that this is an appropriate rate for either attorney.

[2] However, as has so often been the case in this litigation, the Court finds Plaintiffs' briefing somewhat confusing. In this case, the confusion arises from Plaintiffs' prolonged discussion of

5

Plaintiffs seek to recover fees for: (1) 393.1 hours of "general activities" conducted by Alan Woodruff in case 09cv449 totaling $91,080.00 (*see* Ex. A); (2) 24.3 hours of "general activities" by Alan Woodruff in cases 10cv123 and 10cv124 totaling $6,075.00 (see Ex. F); and (3) fees for 102.4 hours of M.J. Keefe's general work in cases 09cv449, 10cv123, and 10cv124 totaling $24,813.00. *See* Ex. K. In sum, the fees Plaintiffs request for this "general" work total $121,968.00. A review of the cited records reveals that this work includes, *inter alia*, researching and analyzing the New Mexico Election Code, researching ballot access challenges generally, researching federal constitutional law, drafting the "general memorandum of law" supporting Plaintiffs' motions for summary judgment, drafting motions, drafting and revising the complaint, conferences with other counsel in the case, drafting and responding to discovery, responding to Defendant's motions, taking depositions, drafting reply briefs, drafting the settlement agreement, and drafting the motion for attorney's fees and costs.

The issue before the Court is what portion, if any, of these fees should be awarded to Plaintiffs. Plaintiffs contend, citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983), that although they were successful on only some of their claims, they are entitled to receive fees for general work done on all claims based on a common core of facts or related legal theories. To that end, Plaintiffs portray the New Mexico Election code as an interrelated web of provisions wherein an invalidation of one provision renders many others unenforceable. *See, e.g.,* Doc. 272 at 9 ("Plaintiffs have directly challenged the constitutionality of individual statutes that represent necessary and indispensable parts of the ballot access schema of New Mexico Election Code <u>as a whole</u>, and the Court has granted Plaintiffs summary judgment on claims that effectively render

---

their contention that <u>all</u> of Plaintiffs' claims are based on a common core of facts or related legal theories such that they are entitled to recover fees for all time expended in the case. *See* Doc. 272 at 2-4 and n.15.

the New Mexico ballot access schema as a whole unenforceable.") (emphasis in original). Defendant, in turn, argues that this characterization is much too broad, and that Plaintiffs' claims are not all legally related merely because they all address alleged defects in the New Mexico Election Code. Further, Defendant takes issue with Plaintiffs' failure to attempt to apportion their "general fees" for those claims on which they actually prevailed. Finally, Defendant points out that, under *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001), Plaintiffs are not entitled to recover fees under the "catalyst theory," which holds that a plaintiff is a prevailing party "if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id*. at 600.

The Court largely agrees with the Defendant on the foregoing issues. First, not all of Plaintiffs' claims are based on related legal theories. While they are all constitutional challenges to various provisions of the Election Code, the claims challenge disparate measures such as petition signature requirements, candidate eligibility requirements, party qualification requirements, and party disqualification process. Plaintiffs' claims rest on various legal theories, including the Due Process, Elections, Equal Protection, and Qualifications Clauses of the United States Constitution. Merely because they are all challenges to the Election Code does not mean that they are based on related legal theories. Similarly, the Court agrees with the Defendant that this is not a case in which there is a common core of facts underlying Plaintiffs' claims. Rather, the vast majority of Plaintiffs' claims are strictly legal challenges in which facts are not at issue.

Second, the Court agrees with Defendant that *Buckhannon* precludes Plaintiffs from recovering for claims that were rendered moot by voluntary action of either the Secretary of State or the New Mexico legislature. In that case, the Supreme Court held that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to

7

achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." 532 U.S. at 605. Plaintiffs' attempts to distinguish *Buckhannon* are unpersuasive. For example, Plaintiffs argue first that *Buckhannon* did not address the issue of fee awards. That is not strictly true. The issue in *Buckhannon*, as framed by the Supreme Court, was whether the term "prevailing party" "includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. We hold that it does not." 532 U.S. at 600. Because one cannot recover fees unless one is a prevailing party, the case is directly applicable to attorney's fees. Second, Plaintiffs argue that *Buckhannon* is not applicable to civil rights cases because the plaintiff in that case was attempting to recover fees under the Fair Housing Amendments Act and the Americans With Disabilities Act. However, the *Buckhannon* opinion expressly states that its analysis of who could be considered a "prevailing party" for the purpose of obtaining attorney's fees applies to a variety of civil rights statutes, including 42 U.SC. § 1988, the attorney's fees statute at issue in this case. *Id*. at 602-03 and n.4. Third, Plaintiffs argue that the *Buckhannon* analysis does not apply to this case because the parties Amended Settlement Agreement "makes it clear that the parties have agreed that the corrective action by the Legislature and Secretary of State was brought about by, and is a result of, Plaintiffs' lawsuits." Doc. 275 at 8-9. But again, that is precisely the issue in *Buckhannon*: the legislature's voluntary action, while perhaps spurred by the lawsuits, lacks the required judicial "imprimatur" in the form of a judgment or consent decree. The legislature is not bound by the parties' settlement agreement or any order of this Court. Merely acknowledging that the lawsuit was the impetus for the change does not satisfy *Buckhannon*. Finally, Plaintiffs argue that if *Buckhannon* is applicable, the Amended Settlement Agreement in this case acts as a consent decree because it

constitutes official judicial approval of the settlement and a level of continuing oversight over its terms. According to Plaintiffs, because the settlement agreement acknowledges the role of this litigation in spurring the Defendant to voluntary action, there is an enforceable consent decree on those issues which satisfies *Buckhannon*. Again, Plaintiffs are mistaken. The Amended Settlement Agreement does not in any way bind the Defendant to the voluntary actions taken by the Secretary of State or the legislature; it merely recognizes that those actions have been taken and that they render certain claims moot. Unlike the claims on which Plaintiffs prevailed, the Amended Settlement Agreement does not bind the Defendant to any particular course of action in the future. Therefore, there is no court-ordered change in the relationship between the parties with respect to those voluntary actions, and *Buckhannon* is not satisfied.

Finally, however, despite the foregoing, the Court concludes that Plaintiffs are entitled to a portion of the fees for "general activities" which do pertain to the claims on which they prevailed (as discussed more fully below). While Defendant faults Plaintiffs for failing to apportion this time to their successful claims, the Court understands that as a practical matter, it is virtually impossible to determine how much time spent in drafting a 14-count complaint should be apportioned to any single count. Similarly, it is impossible to determine how much time taking the deposition of the Secretary of State or of one of her employees should be allotted to any particular claim. These examples demonstrate the difficulty of the apportionment that Defendant demands.

To determine the amount of "general" fees to award, the Court considers the number of claims on which Plaintiffs prevailed as discussed below, the degree of success Plaintiffs achieved, and the complexity of the issues that were determined. The Court also considers the amount of time that it considers reasonably spent on tasks such as drafting a complaint,

researching and preparing motions, and conducting discovery. As the Court has observed in previous Memorandum Opinions, Plaintiffs' approach to litigating this case has been far from efficient. In light of the foregoing factors, the Court concludes that 75 hours is a reasonable amount of time spent on the "general" tasks for the claims on which Plaintiffs prevailed. At a rate of $250 per hour, this results in a fee of **$18,750.00**.

      **B.**      **Count II-A in 09cv449**

Plaintiffs prevailed on Count II-A. The Court granted Plaintiffs' motion for summary judgment, ruling that Sections 1-8-12, 1-8-18, and 1-8-45(C) violated the Qualifications Clause of the United States Constitution by requiring candidates for federal office to be registered voters in New Mexico. *See* Doc. 106 at 3. Furthermore, the Court entered a judgment and injunction against the Defendant on this issue. *See* Doc. 186. Plaintiffs request fees in the amount of $7,450.00 (29.8 hours at an hourly rate of $250). Defendant argues that the amount requested should be reduced because Plaintiffs did not prevail on their emergency motion to include Daniel Fenton on the ballot and recognize the Green Party as a qualified party for the 2010 election cycle. Yet, Defendant acknowledges that Plaintiffs do not seek any fees for the emergency motion. In light of that fact, the Court concludes that Plaintiffs prevailed on Count II-A; that the number of hours is appropriate, and the requested fees are reasonable. The Court will not reduce the fee request. Instead, the Court will award Plaintiffs the amount they request, **$7,450.00**, for their success on Count II-A. *See* Ex. B.

      **C.**      **Count II-B in 09cv449**

Plaintiffs ask for $4,325, or 17.3 hours, *see* Ex. C, in fees for their work on Count II-B, on which they partially prevailed. The Plaintiffs obtained summary judgment on their claim that the Declaration of Candidacy form was unconstitutional because it required a minor party

candidate to be a registered voter. Again, the Court entered a judgment and injunction against the Defendant on the issue. *See* Doc. 186. However, Count II-B also contained Plaintiffs' contention that it is unconstitutional to require minor party candidates to file the Declaration of Candidacy form. The Court granted Defendant's motion to dismiss the latter claim, and as a result denied Plaintiffs' motion for summary judgment on the same issue. In addition, while the Court did declare the requirement that a candidate be a registered voter to be unconstitutional, it did not grant Plaintiffs' requests that it: (1) enjoin the Defendant from requiring minor party candidates to file the form, and (2) require the Defendant to place Daniel Fenton on the ballot. As a result, Defendant argues that Plaintiffs' fees should be reduced by an unspecified amount.

The fact that Plaintiffs did not obtain all the relief that they requested does not mean that they are not entitled to recover fees; they are still a prevailing party on the claim. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (finding that a plaintiff is considered a prevailing party if it succeeds on any significant issue in litigation that gives some benefit that plaintiff sought in bringing the suit). While a portion of Plaintiffs' motion for summary judgment ultimately was determined to be mooted by the Court's ruling on Defendant's motion to dismiss, Plaintiffs filed their summary judgment motion before the Court's ruling. Therefore, the motion was not made recklessly or in bad faith. The Court concludes that the number of hours and hourly rate requested for Plaintiffs' success on Count II-B is reasonable, and will award Plaintiffs **$4,325.00** in fees.

**D.     Count III-D in 09cv449**

Plaintiffs request fees for 28.5 hours of work on Count III-D, totaling $7,125.00. *See* Ex. D. In Count III-D, Plaintiffs asserted that the practice of offering voters the use of a "straight-party" voting option, though not codified in the New Mexico Election Code, was

unconstitutional. This Court denied Plaintiffs' motion for summary judgment on Count III-D, finding that the option is constitutional. Doc. 124. Thus, Plaintiffs are not the prevailing party.

Plaintiffs argue that due to the influence of this lawsuit, the New Mexico legislature has been unable to pass a law codifying the use of straight-party voting, and the current Secretary of State in her discretion has chosen not to employ the option. This is insufficient for an award of fees. To be considered a prevailing party, a litigant must have "receive[d] at least some relief on the merits of his claim" amounting to "a court-ordered change in the legal relationship between the plaintiff and the defendant." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603-04 (2001) (internal quotation marks and alterations in original omitted). As explained above, if a defendant voluntarily changes its conduct during the course of litigation, thereby mooting the plaintiff's case, the plaintiff will not be considered a prevailing party even though he or she may have obtained the relief sought. *Id.* at 605. Plaintiff is not a prevailing party on this claim, and the request for fees is denied.

### E. Count IV in 09cv449

Plaintiffs request $8,100.00 for 32.4 hours of work on Count IV. *See* Ex. E. In Count IV, Plaintiffs claimed that the petition signature forms that the Election Code required minor parties to use were unconstitutionally vague because the forms and the statute prescribing them required the inclusion of different information. The Plaintiffs prevailed on that argument, and the Court entered a Final Judgment against Defendant and directing her to accept both addresses of residence and addresses on voter registration cards as valid for signatures on minor party petitions. *See* Doc. 186.

Defendant argues that Plaintiffs should not recover the full amount of these fees because Plaintiffs did not allege in their Complaint that the forms violated the Elections Clause, leading

the Court to deny that portion of Plaintiffs' motion for summary judgment. Because Plaintiffs lost a portion of the motion for which they now seek fees, Defendant argues that those fees should be reduced. For the same reasons discussed above with regard to Count II-B, the Court concludes that Plaintiffs are the prevailing parties under *Hensley*. The number of hours and total amount of fees appear reasonable for the results obtained, and therefore the Court will award Plaintiffs fees of **$8,100.00** for Count IV.

### F.   Counts II-A and III in 10cv123 and 10cv124

Plaintiffs request fees in the amount of $8,550.00 for Counts II-A and III in cases 10cv123 and 10cv124, representing 34.2 hours of work. *See* Ex. G. In Count II-A, Plaintiffs alleged that the petition signature forms used by minor party candidates were unconstitutionally vague. Defendant argues that while Plaintiffs did prevail on this claim, they did so only because the Court had already decided the same issue in case 09cv449, and therefore it would be duplicative for the Court to award fees twice. The Court agrees that a substantial reduction to avoid a double recovery is appropriate.

With regard to Count III, the Court agreed with Plaintiffs that there was an improper inconsistency between the statutory requirement that signatories of a minor party nominating petition be registered voters and the minor party petition form, which at the time required that signatories be "qualified electors." Thus, the Court concluded that Plaintiffs were likely to succeed on the merits of their claim. Doc. 224. The Court left open the declaratory relief that Plaintiffs sought, but declined to award injunctive relief because Plaintiffs had failed to demonstrate irreparable harm. Apparently as a result of this ruling, the Defendant changed the petition form so that it was in accord with the statute before the Court entered an order expressly granting Plaintiffs summary judgment on this claim. Defendant argues that in the absence of

harm there is no compensable constitutional violation; they also argue that, under *Buckhannon*, a plaintiff is not a prevailing party when the change he seeks comes from voluntary legislative action. Again, the Court agrees with Defendant.

As a result, it appears that Plaintiffs are entitled to recover only a reduced portion of their fees for Count II-A. After reviewing the Plaintiffs' time records, the Court concludes that approximately eight (8) hours, or **$2,000.00**, is a reasonable amount, considering the effort expended and the results obtained.

### G. Count VII in 10cv123 and 10cv124

Plaintiffs seek $4,375.00 for 17.5 hours of work on Count VII in cases 10cv123 and 10cv124. *See* Ex. H. The work performed was researching, drafting, revising a motion for summary judgment and reply brief, as well as reviewing the Defendant's response brief and the Court's order on the motion for summary judgment. This claim was similar, yet not quite identical, to that in Count II-A in case 09cv449, in which Plaintiffs prevailed on the argument that requiring minor party candidates to be registered voters violates the Qualifications Clause and improperly restricts the right of a political party to run the candidates of its choice.

Defendant argues that because of the similarity in the claims, any recovery of attorney's fees for Count VII would be duplicative. The Court disagrees. Though the nature of the claim is indeed similar, Count VII in 10cv123 and 10cv124 challenged a different provision in the Election Code than did Count II-A in case 09cv449, and the arguments Plaintiffs advanced were slightly different and relied on distinct legal authorities. Further, Count VII sought to enforce the rights of parties to nominate the candidate of their choice, while Count II-A asserted a violation of the constitutional rights of candidates. These differences can be seen in the Court's discussions of each respective claim. *Compare* Doc. 103 *with* Doc. 224. In light of this, the Court

concludes that the fees requested are not duplicative. Further, the amount requested is reasonable in light of the work performed and the results obtained. The Court will award Plaintiffs **$4,375.00** in fees.

### H. Count VIII in 10cv123 and 10cv124

Plaintiffs request $5,875.00 in attorney's fees for 23.5 hours of work on Count VII in cases 10cv123 and 10cv124. *See* Ex. I. The work performed was researching, drafting, and revising a motion for summary judgment and reply brief; and reviewing the Defendant's response brief and the Court's order on the motion for summary judgment.

As the Defendant correctly notes, the Plaintiffs did not prevail on the motion for summary judgment for which they are seeking fees. Plaintiffs argued that Section 1-8-45 of the New Mexico Election Code was unconstitutional because it barred any candidate who was registered as a voter of a party, even a party that was not "qualified," from running as an "independent" candidate. The Court denied Plaintiffs' motion for summary judgment, *see* Doc. 224, but the New Mexico legislature later amended the statute to permit any registered voter who was not registered as a member of a "qualified" party to run as an "independent." In their *Amended Settlement Agreement* [Doc. 270-1], the parties agreed to dismissal of Count IX because it was rendered moot by actions of the legislature and the Secretary of State.

Defendant argues that under *Buckhannon* and *Hensley*, this voluntary act of the legislature does not transform Plaintiffs into prevailing parties because their action was not court-ordered. For the reasons stated more clearly in Section A, *supra*, the Court agrees. Because the actions of the Defendant were voluntary, Plaintiffs were not prevailing parties on Count VIII, and therefore are not entitled to recover their fees.

### I.     Count IX in 10cv123 and 10cv124

Plaintiffs request $17,662.50 for 70.65 hours of work on Count IX in cases 10cv123 and 10cv124. *See* Ex. J. In this claim, Plaintiffs argued that Section 1-7-2(C) of the New Mexico Election Code was unconstitutional because it did not require the Defendant to notify political parties when they had been "disqualified." Plaintiffs sought an injunction requiring the Secretary of State to recognize the Green Party as a major political party for the 2010 election cycle. Most of the hours requested relate to researching, drafting, revising, and replying to motions for summary judgment and for preliminary injunction on this claim. Ultimately, the Court did not rule on the motions for summary judgment; however, the Court did deny Plaintiff's motion for injunctive relief on the grounds that Plaintiffs had not shown a likelihood of success on the merits. *See* Doc. 204. In so doing, the Court expressed doubt that Section 1-7-2(C) was unconstitutional. Later, the New Mexico legislature amended the statute to require the Secretary of State to notify disqualified parties of their status no later than March 15 in the year the party is disqualified. In their *Amended Settlement Agreement* [Doc. 270-1], the parties agreed to dismissal of Count IX because it was rendered moot by actions of the legislature and the Secretary of State.

Plaintiffs assert that this change in the law came as a direct result of their claims in this case, and therefore they are entitled to fees. Defendant argues that the Plaintiffs lack evidence of a direct relationship, and that voluntary legislative action does not transform Plaintiffs into prevailing parties on a constitutional argument they lost before the Court. The Court agrees with the Defendant. Plaintiff did not prevail on her claims before the Court, which neither declared Section 1-7-2(C) to be unconstitutional, nor ordered any change in the relative positions or

obligations of the parties. Under *Buckhannon*, Plaintiffs did not prevail and their request for fees will be denied.

## II.     COSTS

Plaintiffs seek to recover **$2,615.64** in costs, which includes filing and service fees for cases 09cv449, 10cv123, and 10cv124, as well as the cost of four deposition transcripts. Defendant does not challenge this request for fees in any manner. Accordingly, it will be granted.

## III.    MOTION TO EXPEDITE

Plaintiffs have moved to expedite ruling on their motions for attorney's fees and costs. That motion will be denied. With one of the most demanding criminal caseloads per judge in the entire nation, and with priority necessarily given to criminal cases (which are subject to the Speedy Trial Act), judges in the District of New Mexico are in no position to expedite routine motions in civil cases absent extraordinary circumstances, which are not present here.

**IT IS THEREFORE ORDERED** that:

1)    *Plaintiffs' Motion for Attorneys' Fees and Costs* [Doc. 272] is **GRANTED IN PART**;

2)    Plaintiffs are awarded attorney's fees in the amount of $45,000.00;

3)    Plaintiffs are awarded costs in the amount of $2,615.64; and

4)    *Plaintiffs' Motion for Expedited Ruling on Motion for Attorneys' Fees and Costs* [Doc. 273] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**